JOSEPHINE EDWARDS COOK & another, administrators *de bonis non* with the will annexed, *vs.* CHARLES SYDNEY COOK, Jr., & others.

Suffolk. January 9, 1930. — March 5, 1930.

Present: RUGG, C.J., PIERCE, CARROLL, & FIELD, JJ.

*Corporation*, Officers and agents, Records, Dissolution, Receivership. *Receiver. Equity Pleading and Practice*, Master: report.

Where, under the by-laws of a Massachusetts corporation, the board of directors has authority to fix the compensation of all officers, action of the board in establishing salaries may be proved although no formal vote of the board is spread upon the corporation records.

A master who heard a suit in equity, one issue in which was, whether a salary paid to a defendant, who was an officer of a corporation, was too large, found that the defendant and his brother formerly had had the entire management of the corporation and each received the same salary; that the brother had died and thereby the responsibility of

the defendant in the management of the business was materially increased; that there had been no fraud in the increase of the salary; that it had been approved by the board of directors who had authority under the by-laws to fix it; that it did not result in a fraudulent diversion of the profits of the corporation, which had a large surplus and paid substantial dividends; that the corporation's business was profitable; that a large amount of money was invested in the enterprise, and that the business was of a nature requiring constant and skilful direction; and that the increase in salary was not in excess of a fair reasonable salary in a business of the kind and size of the corporation's. *Held*, that the increase in the defendant's salary was shown to be legal.

To decree the final dissolution of a corporation on petition by an individual is no part of the general jurisdiction of a court of law or of chancery, and can be justified only by express statute.

G. L. c. 155, § 50, as amended by St. 1928, c. 50, does not give the court of equity jurisdiction to dissolve a corporation, although the votes of its stockholders are equally divided on a question affecting the general management of the affairs of the corporation and there appears to be no way of reaching an agreement and breaking such deadlock, if it does not appear that the votes of the board of directors also are equally divided.

The mere failure of the stockholders of a corporation to elect officers owing to the equal division of the stock does not work a dissolution.

The by-laws of the Massachusetts corporation above described provided for three directors, who were to hold office until others were chosen and qualified, and gave the board power to fill vacancies in any of the offices of the corporation and in the board of directors. At a time when the directors were two brothers and the wife of one of them, one of the brothers, who also was vice-president, treasurer and clerk of the corporation, died. The other brother and his wife then met as a board and, although the meeting was not formal, agreed to fill the vacancy on the board by the election of a son of the surviving brother. Such board afterwards functioned in harmony and apparently the property and business of the corporation were managed honestly, efficiently and with profits to all parties and there was no fraud or conspiracy on the part of the board. The next annual meeting was adjourned from time to time without election of officers because of an equal division of stock, until the filing of a bill in equity seeking the appointment of a receiver and the dissolution of the corporation. A master who heard the suit found that the appointment of a receiver would cause substantial and irreparable damage to the plaintiffs and also to a defendant who owned one half of the stock as well as to the corporation itself. The bill was dismissed. *Held*, that the bill properly was dismissed, no such situation appearing as would justify the appointment of a receiver, or the dissolution of the corporation, or liquidation and distribution of its assets.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on July 5, 1928, and described in the

opinion, by Josephine Edwards Cook and The Atlantic National Bank of Boston, administrators with the will annexed of the estate not already administered of Arthur Doane Cook, against Charles Sydney Cook, Jr., Celia M. Cook, S. Doane Cook and the corporation A. Stowell & Co., Inc.

The suit was referred to a master. Material facts found by the master are described in the opinion. No evidence was reported. The plaintiffs filed fifty-four objections to the report, none of them to the admission or exclusion of evidence, and all of them either to certain findings of fact by the master or to failures by him to find certain facts. They also moved that the report be recommitted to the master for the purposes set forth in the plaintiffs' objections to the master's report and appended to said report, requests having already been made to the master to report sufficient of the evidence to bring the issues therein referred to before the court.

The suit was heard by *Crosby,* J., upon the exceptions to, and the motion to recommit, the master's report and, by his order, interlocutory decrees were entered denying the motion, overruling the exceptions and confirming the report.

Thereafter, by order of *Sanderson,* J., a final decree was entered dismissing the bill. The plaintiffs appealed from all decrees.

*W. H. Foster,* for the plaintiffs.

*C. L. Newton,* (*John Wentworth* with him,) for the defendants.

CARROLL, J. The plaintiffs in this suit in equity are the administrators *de bonis non* with the will annexed of the estate of Arthur Doane Cook. They seek to have certain offices of the defendant corporation declared vacant, to have return made of money paid as salaries, to prevent the individual defendants from receiving excessive amounts as salaries, (as to which, see *Bacon* v. *Bacon,* 266 Mass. 462, 474,) and, in the event of the disagreement of the parties on the election of directors of the defendant corporation, to have a receiver appointed.

The case was referred to a master. On the return of his report interlocutory decrees were entered denying the

plaintiffs' motion to recommit the report and overruling the plaintiffs' objections thereto. By final decree the bill was dismissed. The plaintiffs appealed from both interlocutory decrees and from the final decree.

The defendant A. Stowell & Co., Inc., is a Massachusetts corporation. The estate of Arthur Doane Cook owns two thousand shares of the preferred stock and two thousand shares of the common stock, this being one half of all the stock. The other half is held by the defendant C. Sydney Cook, Jr., hereinafter referred to as the defendant. The capital stock is $800,000, consisting of four thousand shares of preferred and four thousand shares of common, each of the par value of $100. When Arthur Doane Cook died on August 26, 1927, he was vice-president, treasurer, clerk and a director of the corporation. By his will he gave one half of the residue of his estate to his wife, the plaintiff Josephine Edwards Cook, hereinafter called the plaintiff, and one half in trust to her and to the defendant. This stock left by Arthur Doane Cook was a part of the residue of his estate.

On September 7, 1927, the defendant, knowing he had been appointed executor and trustee under the will of Arthur Doane Cook, intending to accept these appointments and without informing the plaintiff of his plan, as the master found, caused a meeting of the board of directors of the corporation to be held; the board at this time consisted of himself and his wife. At this meeting S. Doane Cook, son of the defendant, was elected general manager and director, J. Gould Cook, another son of the defendant, was elected treasurer, and the plaintiff was elected vice-president.

The defendants admitted "that no formal meeting of the board of directors was then held, but allege that all of the directors agree to said elections." The master found that, the defendant and his wife being the only surviving directors, agreed to the elections of the officers named and also agreed to the election of John B. Rafferty as clerk; that, acting under legal advice, the defendant directed the clerk to prepare the record of the meeting of September 7. It

was written out in the usual form and shows the elections of these officers. There was filed with the commissioner of corporations a certificate of change of officers in accordance with the record. The by-laws provided that the board of directors had power to fill vacancies in any of the offices of the corporation and in the board of directors. The master found that the officers named were elected to the offices in the corporation and thereafter acted in their official capacities, with the exception of the plaintiff who resigned as vice-president in May, 1928; that she received no notice of the meeting of September 7, 1927, but within a short time thereafter was informed that she had been elected vice-president of the corporation, and she made no objection; that on or about November 1, 1927, she and the representatives of the estate of her husband knew how the "other vacancies in the offices of the defendant corporation had been filled."

Prior to the death of Arthur Doane Cook, he and the defendant had the entire management of the business of the corporation and each received the same salary. The corporation paid regular dividends and at times additional dividends.

In February, 1927, Arthur Doane Cook and the defendant made a written agreement which provides that the survivor agrees that A. Stowell & Co., Inc. (the defendant corporation) will pay to the estate "of the first deceased party an annual income of an amount equal to one-half (½) of whatever salary he (viz.: the survivor) shall receive" from the corporation for a period of five years. The plaintiff knew of this agreement and about ten days after the death of her husband she was told by the defendant that he was increasing his annual salary from $30,000 to $40,000, that under the agreement she should receive one half of what he received. His salary was increased to $40,000 as of September 1, 1927. The master found there was no record of a vote of the directors or of the stockholders making this increase "unless it can be said that at the meeting of the board of directors held May 2, 1928, or at the annual meeting of the stockholders of the defendant

corporation on May 2, 1928, or both, the action increasing the salary of the defendant" was "ratified, adopted and confirmed." It was further found that the matter of an increase in the salary of the defendant was discussed by the directors, and they approved of it and "have at all times approved of it." Payments from September 12, 1927, to February 17, 1928, amounting to $9,833.34 were made to the plaintiff and were paid to her with knowledge on her part that they were under the agreement of February, 1927. In March of 1928, it was discovered that the payments under the February agreement of 1927 should have been made to the estate of Arthur Doane Cook. She thereupon paid to the defendant corporation the sums paid her and the corporation paid to the estate the amount so received from the plaintiff and thereafter from March to June, 1928, inclusive, continued to pay the estate. The master also found that the plaintiff knew these payments were all made under the agreement of February, 1927; that the estate was receiving a sum equal to one half the salary of the defendant at the rate of $40,000 annually; that the attorney for her husband's estate knew in November, 1927, that the defendant was drawing a yearly salary of $40,000; that no offer to return any of the money received under the agreement of February, 1927, was made by either of the plaintiffs; that at some time in November, 1927, the plaintiff did object to the increase in the salary of the defendant.

There were additional findings that upon the death of Arthur Doane Cook the responsibility of the defendant in the management of the business was materially increased; that the reduction in the inventory was warranted and did not restrict the corporation from paying the usual dividends; that the officers of the defendant corporation did not unreasonably withhold any information from the plaintiff or her attorney relating to the corporation's affairs; that within a short time after the death of Arthur Doane Cook, probably in November, 1927, his widow was informed that the defendant offered to have her elected a director in place of Mrs. Celia M. Cook, which offer was

declined; that the annual meeting was to be held in March, 1928, but was adjourned from time to time until May 2, 1928; that prior to the meeting negotiations were had with the plaintiffs in reference to the election of a board of directors satisfactory to all parties; that the defendant wrote to the president of the plaintiff bank and expressed his willingness that some officer of the bank should be elected to the board of directors; that the defendant did not refuse to coöperate with the plaintiffs for "a so called joint control of the defendant corporation by C. Sydney Cook, Jr., and the estate of Arthur Doane Cook" except that the defendant refused to consent to the election of Walter H. Foster, the plaintiff's attorney, to hold the offices of director and treasurer of the corporation. In concluding the report it was found that the corporation is in sound financial condition with a large surplus paying substantial dividends, and that forced liquidation would cause substantial loss to all parties.

The plaintiffs contend that the defendant should account to the defendant corporation for all sums drawn by him as salary in excess of $30,000 a year. As we construe the report of the master, the defendant from September 1, 1927, continued to draw a salary of $40,000 a year until July, 1928, when the parties stipulated his salary should be $30,000. It was found that no fraud was practised by the individual defendants on the corporation or on the plaintiffs, nor was there any fraudulent diversion of the profits of the corporation. The business was profitable, a large amount of money was invested in the enterprise, it was of a nature requiring constant and skilful direction. The increase in salary, as found by the master, was not in excess of a fair reasonable salary in a business of the kind and size of the defendant corporation. This question was one of fact. *Meyer* v. *Fort Hill Engraving Co.* 249 Mass. 302, 306. Under the by-laws of the corporation, the board of directors had authority to fix the compensation of all officers. It was not essential that the salaries established should be shown by formal votes spread on the corporate records. See *Topping* v. *Bickford,* 4 Allen, 120, 122; *Lynde-*

*borough Glass Co.* v. *Massachusetts Glass Co.* 111 Mass. 315, 317; *Fisk* v. *New England Tire & Supply Co.* 244 Mass. 364, 372; *Banca Italiana Di Sconto* v. *Columbia Counter Co.* 252 Mass. 552, 559. The directors of the defendant corporation agreed that the salary of the defendant should be increased to $40,000, and they all approved of the increase. This is sufficient to warrant the denial of the plaintiffs' request that the defendant be ordered to pay to the defendant corporation all money paid him in excess of $30,000 a year. Furthermore, it appears that on May 2, 1928, the directors voted to ratify "all the acts and doings of the officers and directors from September 7, 1927, to this date," and this vote is shown by the corporation records. The fact that this ratification was adopted by a board of which the defendant, his wife and son were members, does not affect its validity, there being no fraud and no evidence of an attempt to appropriate the profits of the corporation unlawfully under the pretence of salary. *Fillebrown* v. *Hayward,* 190 Mass. 472, 478. *Meyer* v. *Fort Hill Engraving Co.* 249 Mass. 302. There is nothing in *Henry·Wood's Sons Co.* v. *Schaefer,* 173 Mass. 443, cited by the plaintiffs, in conflict with what is here decided. Considering all these facts bearing on the question of the increase in salary granted the defendant, they are, in our opinion, sufficient to show that the increase was legal. We do not think it necessary to discuss the question of the effect of the plaintiffs' knowledge of the increase or the receipt by them of money paid because of this increase. See, also, *Bacon* v. *Bacon,* 266 Mass. 462, 474.

Another contention of the plaintiffs is that a receiver should be appointed to wind up the affairs of the corporation and distribute its assets to the stockholders. A business corporation may be dissolved under G. L. c. 155, § 50, as amended by St. 1928, c. 50, by vote by the majority of its stock and upon petition to the court. A petition for dissolution may also be filed by the holder or holders of forty per cent of the capital stock issued and outstanding and entitled to vote, "if the votes of its board of directors and of its stockholders are equally divided on a question affecting the general

management of the affairs of the corporation and there appears to be no way of reaching an agreement and breaking such deadlock." The court on such a petition may, after notice and hearing, dissolve the corporation. The statute cited is not applicable here. The votes of the board of directors are not equally divided; there is a division in the votes of the stockholders. But to have the statute apply, the votes of the board of directors must be equally divided. The statute was not passed for the purpose of ordering the dissolution of a prosperous corporation, where its affairs are wisely administered and it is conducting an established and well known business, merely because of a disagreement between the present stockholders, and where it is not shown there is no way open to the parties "of reaching an agreement and breaking such deadlock." Again, it does not appear from the frame of the plaintiffs' bill that they seek relief under this statute. In a case of this kind, on the facts found by the master, in the absence of legislative authority we have no jurisdiction on the suit of an individual to dissolve the corporation. ". . . the dissolution of a corporation is a peculiar function which resides primarily in the Legislature and is conferred upon courts only by explicit legislative authority." *Olds* v. *City Trust, Safe Deposit & Surety Co. of Philadelphia,* 185 Mass. 500, 505. To decree the final dissolution of a corporation on petition by an individual "is no part of the general jurisdiction of a court of law or of chancery, and can be justified only by express statute." *Folger* v. *Columbian Ins. Co.* 99 Mass. 267, 276. The mere failure to elect officers owing to the equal division of the stock by the parties does not work a dissolution. *Boston Glass Manufactory* v. *Langdon,* 24 Pick. 49, 54. *Knowlton* v. *Ackley,* 8 Cush. 93. *Packard* v. *Old Colony Railroad,* 168 Mass. 92, 99. *Apsey* v. *Chattel Loan Co.* 216 Mass. 364, 367. Under the by-laws and G. L. c. 158, § 19, the officers were to hold office until others are chosen and qualified. *Boston Glass Manufactory* v. *Langdon, supra. Knowlton* v. *Ackley, supra. Apsey* v. *Chattel Loan Co. supra.* The defendant and Celia M. Cook were directors prior to September 7, 1927. They were the only surviving direc-

tors when on that date they elected S. Doane Cook a director to fill the vacancy caused by the death of Arthur Doane Cook, and thereafter, as the master found, these three directors as well as the other officers "acted in their respective official capacities, except Josephine Edwards Cook who resigned as vice-president some time in May of 1928."

*Chelmsford Co.* v. *Demarest,* 7 Gray, 1, relied on by the plaintiffs as an authority that the offices of treasurer and one director are vacant, is to be distinguished. In that case the issue concerned the right to recover on a bond given by the treasurer of a manufacturing company who had held the office for many years without an annual election. It was held that the surety on the bond was not liable for defaults occurring after the expiration of the original term of office. No question of that kind arises here.

The plaintiff has not made out a case for the appointment of a receiver. ". . . the appointment of a receiver . . . is merely ancillary to other relief. . . . Ordinarily a receiver will not be appointed in actions against directors or officers of a corporation for misconduct in its management . . . . Nor will such an appointment be made when a receivership would amount in effect to a dissolution of the corporation." *Richardson* v. *Clinton Wall Trunk Manuf. Co.* 181 Mass. 580, 582–583. While an appointment of a receiver of a corporation could be made in a proper case, the facts here disclosed do not justify such an appointment. The defendant corporation is solvent. There is no necessity of such an appointment to preserve the assets of the corporation. They are already in the possession of a board of directors who are working in harmony and apparently the property and business of the corporation are managed honestly, efficiently with profits to all parties. To appoint a receiver at this time upon the facts found by the master would be unjust to the plaintiffs and all the stockholders. It would, as the master finds, "cause substantial and irreparable damage to the plaintiffs and also to the defendant C. Sydney Cook, Jr.," as well as to the corporation itself.

Cases are to be found of the appointment of receivers of

corporations because of dissensions in the board of directors so serious as to damage the property of the corporation and to make it impossible to carry on its business, or because of a deadlock in the governing board it is probable that a suspension of the corporation's business will result. See *Featherstone* v. *Cooke*, L. R. 16 Eq. 298; *Sternberg* v. *Wolff*, 11 Dick. (N. J.) 389; *Miner* v. *Belle Isle Ice Co.* 93 Mich. 97. But no such conditions exist here. The corporation is operating in a successful manner for the benefit of all the stockholders. There is no disagreement among the directors, and the principles of law applicable to the settlement of disputes between partners is not to be applied here, where it appears that the disagreement is between stockholders of a corporation. *Pratt* v. *Bacon*, 10 Pick. 123, 125, 126. *Russell* v. *M'Lellan*, 14 Pick. 63, 68. *Godfrey* v. *Mutual Finance Corp.* 242 Mass. 197, 200. There is no reason, on the facts here shown, for the dissolution of the corporation, nor for its liquidation and the distribution of its assets.

As has been said there was no fraud or conspiracy by the directors; they did not deprive the plaintiffs of their share of the profits; there was no breach of trust by the defendants. These facts dispose of some of the plaintiffs' allegations and render it unnecessary to discuss certain questions argued by the plaintiffs.

The evidence shows that during the lifetime of Arthur Doane Cook, notwithstanding the division of the stock between him and his brother, the affairs of the corporation were carried on in harmony. After the death of Arthur Doane Cook his brother, the defendant, in good faith opposed the election of the attorney for the plaintiffs to the board of directors, on the ground of the attorney's "hostility toward and lack of confidence in" the defendant, acting in the honest belief that the election of the attorney would not be for the best interests of the corporation. But the defendant was willing to coöperate with the plaintiffs and allow them a representative on the board of directors and was ready "to vote for anyone whose election will tend to bring harmony and successful management."

Many objections to the master's report were filed by the

plaintiffs and overruled by an interlocutory decree.  It is not necessary to discuss them in detail.  There is no essential inconsistency in the findings.  The evidence is not reported.  The report is drawn with care and intelligence. Under the order of reference the master was to find the facts.  This order was complied with.  Nor can it be said the findings were based on inadmissible evidence.  We see no merit in any of the plaintiffs' objections.  There was no error in the denial of the plaintiffs' motion to recommit the report.  Ordinarily our courts do not interfere with the internal management of a corporation.  Conditions, however, may arise in the future because of the equal division of the stock, which would render it necessary for the court to interfere, but no such condition exists at present.  On the facts here presented, the decrees were right.  Both interlocutory decrees and the final decree are affirmed with costs.

*Ordered accordingly.*