RAPHAEL SAGALYN & others *vs.* MEEKINS, PACKARD AND WHEAT INC. & others.

Hampden.    September 18, 1934. — April 29, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Corporation*, Officers and agents, Voting trust, Ultra vires. *Fiduciary.*
    *Equity Jurisdiction*, Suit by minority stockholder. *Equity Pleading
    and Practice*, Costs.

Statement by RUGG, C.J., as to the duty of directors of a corporation.
Where it appeared that the directors of a corporation, shortly after the
    death of one of its officers, voted to increase by the amount of one third
    of his salary the salary of each of the three principal officers, who were

also directors and whose salaries differed substantially in amount; that each of the three votes taken for this purpose required for its adoption the affirmative vote of at least one of such three directors; that the death of the deceased officer did not substantially increase the work of such three officers; and that the increased salary of each of the three was in excess of the fair value of the services rendered by him to the corporation, each must repay to it the excess received by him, notwithstanding that the directors voted the increases in salaries in good faith and in the honest, although mistaken, belief that the services of the three were worth them.

The use of funds of a corporation to defray the expenses of establishing a voting trust of its stock to insure the continuance of its then management, the directors honestly believing that a change in management would be harmful to it, was *ultra vires* and the directors must refund to it the amount so paid.

On the record of an appeal from a final decree in favor of the plaintiffs in a suit in equity by stockholders of a corporation against it and its directors seeking to recover from the directors certain money for its benefit, no abuse of discretion appeared with respect to a provision of the decree that the corporation pay to the plaintiffs, out of the money so recovered by it, a certain sum for counsel fees and expenses incurred by them in the prosecution of the suit.

BILL IN EQUITY, filed in the Superior Court on February 24, 1933, and afterwards amended.

The suit was referred to a master. Material findings by him are stated in the opinion. By order of *Williams*, J., there were entered an interlocutory decree confirming the master's report and a final decree granting the relief sought by the plaintiffs. The defendants appealed.

The case was submitted on briefs.

*C. H. Beckwith*, for the defendants.

*J. B. Cowett & J. K. Galleher*, for the plaintiffs.

RUGG, C.J. This is a suit by stockholders against a Massachusetts corporation and its directors. The object of the suit is to recover for the benefit of the corporation (1) the portion of salaries paid to three of the defendants as managing officers of the corporation in excess of the fair value of their services, and (2) certain moneys of the corporation paid for establishing a voting trust of its preferred stockholders designed to perpetuate the control of its affairs by certain of the individual defendants.

The case was referred to a master, who filed a comprehensive report covering all issues. There is no report of the

evidence. An interlocutory decree, from which no appeal was taken, was entered overruling exceptions to the master's report and confirming it. The findings by the master are not contradictory, inconsistent, or incomplete. They must be accepted as final and treated as true. *Kilkus* v. *Shakman*, 254 Mass. 274, 276. *Levey* v. *Nason*, 279 Mass. 268, 271. *Samuel & Nathan E. Goldstein, Inc.* v. *Dietz*, 284 Mass. 548, 549.

1. The facts thus displayed as to the salaries are these: The corporation carried on a large department store in Springfield. It appears to have been prosperous up to 1930, when sales and income began to diminish. This was due, not to inefficient management, but to general conditions. The defendant Charles H. Tenney was president and a director of the corporation. He was a man of exceptional ability, exercised some general management over the store, and had many other interests. The defendant Wheat was a vice-president, treasurer and clerk of the corporation. He performed the duties naturally incident to those offices and without the title exercised the functions of general manager. His experience in the department store business was great and he worked hard and efficiently for the corporation. Charles M. Tenney was a vice-president, assistant treasurer, merchandise manager and sales promotion manager. While the merchandising practices of the corporation under his direction have not been altogether successful, it was not proved that he had not adequately and completely discharged the duties of his position. Daniel E. Galleher, a very able merchant, was for many years assistant treasurer and sales promotion manager of the corporation, and at the time of his death received an annual salary of $15,000. On April 7, 1930, while he was holding those offices, the directors established the salaries of Charles H. Tenney, Wheat, and Charles M. Tenney respectively at $4,500, $17,000, and $12,000 per year. The by-laws of the defendant provided that the directors might fix the time and manner of calling their meeting, and that a majority of the board should constitute a quorum. On May 3, 1930, a meeting of the directors was held, at which six were

present including the two Tenneys and Wheat. These six constituted a majority of the board. By the death of Galleher the annual expenses of the corporation were reduced by $15,000. The directors felt that this amount should be divided among the other three chief executive officers. Thereupon it was voted that the annual salaries of Charles H. Tenney, Wheat, and Charles M. Tenney each be increased $5,000, to become effective as of May 1, 1930. There were separate votes as to the salary increase for each officer, and each officer refrained from voting on his own salary. The record book, however, showed a single vote passed unanimously. There was no evidence that these increases were brought about by concerted action on the part of the three officers benefited. Together these three constituted one half of the total number of directors present at the meeting, and the votes could not have been adopted as to any one of them without the affirmative vote of at least one of the others. The suggestion of the increase was made by Charles H. Tenney, and the remaining directors thought this amount should be divided equally between him, Wheat and Charles M. Tenney. The work and responsibility of each of the two last mentioned were slightly increased by the death of Galleher; the work of Charles H. Tenney was not increased at all. The master found that the salary of each of these three defendants as thus increased was in excess of the fair value of the services rendered by each in substantial and specified amounts. Further findings of the master were in these words: "If on the facts as found with reference to the happenings at the meeting of May 3, 1930, the issue is the fair value of the services of these officers, then the above findings are material. If on the other hand, the rule of law applicable is that salaries fixed under these circumstances at a meeting so attended and with votes so adopted shall not be interfered with in the absence of bad faith on the part of the directors, then I find that the directors in fixing these and subsequent salaries acted honestly and in good faith and without any conscious fraudulent purposes or intent and with the honest, if, as I find, mistaken belief

that the services of these officers were worth the amount voted them. The defendant Charles H. Tenney, Harold A. Wheat and Charles M. Tenney believed they were worth the additional salary voted to each. The action of the directors was not consistent with reasonably prudent and skilful management of the business under the business conditions then obtaining. At least some portion of Galleher's salary should and could have been saved. Reasonably they should have questioned whether splitting this salary into thirds and adding exactly one third to each of three salaries which differed greatly in their then amounts was the proper method of determining the fair value of the services of the respective officers."

The individual defendants were directors and were acting in a fiduciary capacity. They were required to exercise their authority in the utmost good faith. They may not be held responsible for mere errors of judgment or want of prudence in the performance of their duties; they are bound to act with reasonable intelligence. The management of the corporation is vested commonly in the board of directors. Their action taken in good faith, even though wanting in sound judgment, does not involve them in personal liability. *Lyman* v. *Bonney*, 118 Mass. 222. *Hill* v. *Murphy*, 212 Mass. 1, 3. *Abbot* v. *Waltham Watch Co.* 260 Mass. 81, 93, and cases cited. The court does not undertake to substitute its business view for that of those vested with the control of corporate affairs. Where personal advantage is involved, as in the fixing of salaries to be received by directors, there is a fiduciary element in issue which may be open to inquiry in a court of equity. *Fillebrown* v. *Hayward*, 190 Mass. 472, 478. *Atherton* v. *Emerson*, 199 Mass. 199, 218. *Meyer* v. *Fort Hill Engraving Co.*, 249 Mass. 302, 305–306. *Albert E. Touchet, Inc.* v. *Touchet*, 264 Mass. 499, 507. *Cook* v. *Cook*, 270 Mass. 534, 541. *Geddes* v. *Anaconda Copper Mining Co.* 254 U. S. 590, 599. The circumstances of the case at bar are somewhat peculiar. Six directors were present at the meeting when the increases of salaries were voted. No action could be taken without the affirmative vote of at least one of the three executive

officers here involved. It is plain that as rational human beings each of these three knew that his own increase of salary probably depended upon his vote for a similar increase for one or both of the others. This meeting was held shortly after the general salaries for the year had been fixed. It was held in view of the recent death of an executive officer. It must have been manifest that this event would cause no substantial increase in the duties of the defendants. In such conditions, mere honesty of purpose is not decisive. Fraud is not essential to every breach of fiduciary duty. The trust responsibility to refrain from taking an undue advantage of the corporation persists. The method and amount of increases in salary were themselves open to suspicion. Everybody is presumed to intend the natural consequences of his actions, and not infrequently this principle requires the inference of breach of a fiduciary duty from particular conduct even in the absence of moral turpitude. Unjust enrichment of one occupying a trust relationship at the expense of his fiduciary is scrutinized carefully in a court of equity. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 117, and cases cited. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 67. *Hathaway* v. *Huntley*, 284 Mass. 587. See *McKey* v. *Swenson*, 232 Mich. 505, 513. Although the case at bar is close to the line on this point, we think that the defendants Charles H. Tenney, Wheat and Charles M. Tenney each must refund to the corporation the excess of salary above the fair value of his services. This was a breach of fiduciary duty for personal profit and not a mere error of judgment. The case falls within the principle stated in *Stratis* v. *Andreson*, 254 Mass. 536, and cases there collected. This, in our opinion, is not laying too onerous a burden upon directors who receive salaries as executive officers. It does not transfer to the court managerial functions. It simply reminds disinterested directors of the duties naturally incumbent on them and fastens upon interested directors a compelling sense of their fiduciary obligations.

What is a reasonable salary for specified executive duties of an officer of a corporation is a question of fact. *Cook* v.

*Cook,* 270 Mass. 534, 541.  The finding of the master is explicit as to the excess of salary paid to each of the executive officers of the corporation beyond the fair value of his services.

2. Some dissensions arose among the stockholders as to the continuance of the existing management of the corporation in 1932.  This was based on the circumstance that, although normally the voting power was vested in holders of common stock, provision was made for that power to pass to the preferred stockholders when for two consecutive dividend periods no dividends should be paid on preferred stock.  That was foreseen as likely to be inevitable.  The defendants the Tenneys and Wheat thereupon determined to form a voting trust of the preferred stock.  Such agreement was drafted.  Its design was to insure the continuance of their management.  It was the honest belief of all the directors that that management was good and that to make a change would be disastrous to the corporation.  Without express vote the expenses involved in setting up this trust were paid by the corporation.  There is nothing illegal about a voting trust of stockholders.  It is an agreement among stockholders of a corporation to make their power felt through combination for definite purposes.  *Brightman* v. *Bates,* 175 Mass. 105.  *Bullivant* v. *First National Bank of Boston,* 246 Mass. 324, 333.  *Abbot* v. *Waltham Watch Co.* 260 Mass. 81, 91.  The corporation in the case at bar was not a party to this voting trust.  Its participation in such trust was not authorized by statute.  The use of corporate funds for setting up a voting trust can hardly be regarded as a corporate purpose.  In the circumstances here disclosed the payment was *ultra vires* the corporation.  *Clark* v. *National Steel & Wire Co.* 82 Conn. 178.  The amount thus improperly paid out must be returned to the corporation.  *Corey* v. *Independent Ice Co.* 226 Mass. 391, 393.  *Dome Realty Co.* v. *Rottenberg,* 285 Mass. 324.

3. A paragraph was inserted in the final decree to the effect that the corporation pay to the plaintiffs, out of the amounts to be paid to it by the individual defendants,

$2,500 for counsel fees and expenses paid and incurred by the plaintiffs in prosecuting this suit for the benefit of the corporation.   With respect to this paragraph the trial judge reported these material facts:  No evidence was heard as to counsel fees or expenses.   The master's report was before him.   The length of time taken in hearings before the master was stated by counsel.   He had personal knowledge of the time taken in arguing motions before him.   Giving weight to those factors and the amount recovered by the corporation as established by the final decree, he exercised his discretion in determining the sum for counsel fees and expenses.

This is a matter which easily may become subject to abuse.  It commonly rests in sound judicial discretion. *Guay* v. *Holland System Hull Co.* 244 Mass. 240, 247.   *Davis* v. *Bay State League,* 158 Mass. 434.   *Beaudette* v. *Graham,* 267 Mass. 7, 9, 13.   It cannot be said on this record that there has been abuse of discretion.

*Decree affirmed with costs.*