GEORGE R. SHAW, executor, & another *vs.* LEWIS F. HARDING & others.

Plymouth.    May 9, 1940. — July 3, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Corporation*, Officers and agents, Suit by minority stockholder.  *Interest. Equity Jurisdiction*, Accounting, Suit by minority stockholder.  *Equity. Pleading and Practice*, Decree, Costs.  *Evidence*, Presumptions and burden of proof.

Upon an appeal from a final decree in a suit in equity, facts found by a master required a conclusion, contrary to that reached by the trial judge, that one who was the president and treasurer and general manager of a corporation was entitled to receive for his services a sum found by the master, upon evidence held by this court properly admitted, to have been reasonable compensation, even if votes of the directors to pay him a salary specifically as president and treasurer were invalid.

The burden of proving that expenditures of funds of a corporation by an officer for its expenses were justifiable, where it appeared that he had charged himself with receipt of the money on its books, was upon him, and, in the absence of evidence to that effect, he was liable to the corporation for the amount of the expenses.

A treasurer of a corporation, who issued to himself notes of the corporation on account of his salary, was not entitled to interest thereon in the absence of an agreement therefor with the corporation.

The final decree in a suit in equity, brought in behalf of a corporation by two of four stockholders against officers and directors, who were also the other two stockholders, should have ordered the defendants to repay to the corporation funds for which they were found accountable to it; it was error to order payment of one half thereof to the plaintiffs as full satisfaction of the defendants' liability.

A decree preventing the defendants in a suit in equity who owned half of the stock of a corporation from continuing in sole control of the corporation to the exclusion of the plaintiffs who owned the other half of the stock was proper in the circumstances.

A final decree in a suit in equity enjoining the defendants from conduct inimical to a corporation of which they were officers was erroneous where it did not appear that such conduct was contemplated by the defendants.

A decree in a minority stockholders' suit was improper in awarding to the plaintiffs a sum to be paid from the corporation's funds for fees and disbursements of their counsel where the decree did not order any payment by the defendants to the corporation.

BILL IN EQUITY, filed in the Superior Court on May 16, 1935.

The suit was referred to a master. He admitted testimony of officers of two corporations, which he described as "located in Boston or its vicinity and all engaged in the same kind of business as that of The George H. Shaw Company." In answer to a hypothetical question, one stated that the fair value of the services, described in the question, of Lewis F. Harding for The George H. Shaw Company, was $10,000 to $15,000 per year, and the other stated the fair value was $10,000 to $12,000 per year. The plaintiffs objected to the admission of such testimony and

to the denial of their motion that it be struck out "as not in issue under the bill of complaint and the answer thereto and . . . [as] immaterial and irrelevant."

After a hearing by *Buttrick*, J., there were entered an interlocutory decree sustaining the plaintiffs' exceptions to the master's report and otherwise confirming it, and a final decree in substance directing the defendants Harding to be held to account for $40,137.98 taken from the corporation "as alleged payment of salary of Lewis F. Harding" and interest, a total of $51,935.35; for $1,823.27 taken for alleged travelling expenses, with interest, a total of $2,232.27; for $231.11, alleged paid Harding on his notes, with interest, a total of $283.09; and that one half of the total of the items, $54,450.71, be paid to the plaintiffs by the Hardings, which payment "shall operate as full payment and satisfaction of" the Hardings' liability to account; further, that Lewis F. Harding cancel notes issued him for alleged salary, and that the defendants Harding be enjoined as stated in the opinion. The decree awarded costs against the defendants Harding "taxed as in an action at law," and contained the following paragraph: "Without deciding what are the reasonable sums due counsel for the plaintiffs for his fees and disbursements, the defendant The George H. Shaw Company is ordered to pay to the plaintiffs the sum of $1,500 taxed as costs as between solicitor and client."

*A. M. Lyon,* for the defendants Harding.

*J. W. Murdoch,* for the plaintiffs.

RONAN, J. This suit in equity, brought in behalf of a corporation by two stockholders, against Lewis F. Harding, his wife, Lucretia D. C. Harding, and The George H. Shaw Company, alleges that the Hardings (who will be herein referred to as the defendants) have been in full control of the corporation since April 2, 1930, and that they have mismanaged its business and affairs, in certain particulars alleged, to the detriment of the corporation. The case was referred to a master, whose report was confirmed after a judge of the Superior Court had sustained the plaintiff's exceptions thereto and overruled those of the defendants.

The defendants appealed from the interlocutory decree confirming the report, and from the final decree.

The George H. Shaw Company was organized in 1910, and has since conducted the business of manufacturing and selling varnishes, japans and similar products. George H. Shaw, Ezra Shaw (his son), one Perkins and Harding were then actively engaged in the business. George H. Shaw died in 1922, and his son Ezra Shaw succeeded to practically all the shares owned by his father. Harding acquired the shares held by Perkins, who died in 1918. In 1923 Ezra Shaw, for a consideration, transferred forty-five shares of stock to Harding, so that from then on each held one half of the outstanding stock. Ezra Shaw arranged with Harding that Ezra's son, George R. Shaw, should come into the business. George R. Shaw entered the employ of the company where he continued until he was discharged by Harding in November, 1930. Between 1923 and 1929 the business was prosperous. Large dividends were paid and Ezra Shaw and Harding drew substantial and equivalent salaries, excepting for the last three years of that period when Ezra Shaw drew an annual salary of $10,820 and Harding a salary of $12,000. Ezra Shaw began in 1928 to restrict his. activities in the business, and from then on until his death in March, 1930, the business was conducted principally by Harding.

At the annual meeting of the stockholders held on January 20, 1930, Ezra Shaw and the two defendants were elected directors. Mrs. Harding held three shares of stock which were given to her by her husband. The Hardings and Ezra Shaw had constituted the board of directors for several years prior to January 20, 1930. On April 2, 1930, the defendants held a directors' meeting. Harding was elected president and his salary as president and treasurer was fixed at $1,000 a month. The defendants as a board of directors held other meetings in 1932, 1933, and 1934, at which Harding's salary was fixed at $10,000 if the vote of April 2, 1930, should be held invalid in proceedings which were then pending, and votes fixing the salary at this sum were adopted in 1933 and 1934. No third director was

elected at any of these meetings. The two directors acted as the board. No stockholders' meeting was held subsequently to January 20, 1930, until January 22, 1935. The plaintiffs were unable to call a meeting as the by-laws required a request from three stockholders, and the defendants were apparently willing to permit the corporation to continue along without further meetings of the stockholders. The amount of stock owned by Harding was in issue in litigation which was then pending and which terminated in 1934. Moreover, the parties in that suit had entered into a stipulation whereby the defendants agreed not to vote at any corporate meeting by virtue of shares of stock not legally owned by them but standing in their names or the names of others. The annual meeting held on January 22, 1935, adjourned from time to time until April 22, 1935, when it became apparent that the parties could not agree upon the selection of a board of directors. The present bill was filed on May 16, 1935.

The master found that Harding drew from the corporation for salaries from January 1, 1931, to May 16, 1935, when this bill was filed, $40,137.98 in cash, and also held $2,750 in notes for unpaid salary; that "from 1928 until 1930 the bulk of the burden of carrying on the business was taken over by Harding"; that from 1930 to June, 1935, he performed the duties of general manager, and that he was engaged in purchasing raw materials, superintending the manufacturing branch of the business, administering its finances, arranging credit with various banks, meeting the customers and "generally supervising the entire conduct of the business." Harding's services were found to be valuable to the company. He spent most of his time in furtherance of its business. The master, subject to the exceptions of the plaintiffs, admitted evidence of the value of the services rendered by Harding and found that the fair value of such services was $10,000 a year.

Harding was receiving a salary of $10,000 on April 2, 1930, when the defendants, purporting to act as directors, fixed his salary as president and treasurer at $1,000 a month. He had received a salary of $12,000 from 1927 to 1930. He

testified that he relied upon the votes taken by his wife and himself in fixing his salary. The vote of April 2, 1930, was declared invalid in a previous suit, and even if we assume that the subsequent votes were also invalid it does not necessarily follow that Harding was not entitled to reasonable compensation for his services. The votes in question were expressly confined to Harding's services as president and treasurer. Many of the services that he rendered were outside those due from one holding such offices. The fact that the corporation failed to pass any vote determining his compensation as general manager would not of itself be sufficient to bar Harding from receiving compensation. *North Anson Lumber Co.* v. *Smith,* 209 Mass. 333. He intended to be paid at the time the services were rendered. He continued to perform substantially the same services after the death of Shaw as he had performed before and for which he had received compensation. The master's report shows that since 1928 the responsibility for the conduct of the business rested principally upon Harding, and that although the corporation lost money in some of the years from January 1, 1930, to May 16, 1935, such loss was not attributable to Harding, who conducted the business as well as could be expected in view of the general business conditions then prevailing. His services were beneficial to the corporation and were performed under such conditions that the corporation expected or at least ought to have expected to pay for them. It is true that, in the absence of a contract, the rendition of services by an officer of a corporation imposes no obligation upon the latter to pay for them, *Pew* v. *First National Bank of Gloucester,* 130 Mass. 391; *Marcy* v. *Shelburne Falls & Colrain Street Railway,* 210 Mass. 197; *Sears* v. *Corr Manuf. Co.* 242 Mass. 395, yet the services may be performed in such circumstances that an obligation upon the part of the corporation to pay is shown to be implied. *Bartlett* v. *Mystic River Corp.* 151 Mass. 433. *Apsey* v. *Chattel Loan Co.* 216 Mass. 364. *Daniels* v. *Briggs,* 279 Mass. 87, 91, 92. An officer whose compensation is neither excessive nor unreasonable cannot be required to pay back any part of it to

the corporation. *Blair* v. *Telegram Newspaper Co.* 172 Mass. 201. *Meyer* v. *Fort Hill Engraving Co.* 249 Mass. 302. *Stratis* v. *Andreson*, 254 Mass. 536. *Daniels* v. *Briggs*, 279 Mass. 87. The conduct of Harding in managing the business of the corporation has not been shown to have been so adverse to the best interests of the corporation as to warrant a denial of compensation. *Daniels* v. *Briggs*, 279 Mass. 87. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1. We think that Harding was entitled to receive reasonable compensation for his services; and that, as it does not appear that he received any salary in excess of $10,000, the amount found by the master to be fair compensation for his services, during the period in question, the corporation was not entitled to be reimbursed for any salary withdrawn by him. He is entitled to compensation at the rate of $10,000 a year from January 1, 1931, to May 16, 1935. He is also entitled to collect, but without interest, the said notes for unpaid salary which he now holds.

Harding was in charge of the books of the company since its incorporation in 1910. He made nearly all the actual entries in these books which, while not elaborate, were found to be sufficient. Although Harding travelled in the interest of the company and contended that he furnished detailed statements covering the expense incurred, the master, upon the evidence, was unable to find what part of such expenses for the years 1931 to 1934, amounting to $1,823.27, was justifiable. Harding had charged himself with the receipt of this amount of money and, upon an accounting, the burden was upon him to show that the corporate funds were used only for the purposes of the corporation and that the amounts charged were fair and reasonable. The defendants were properly charged with the amount of this expenditure. *Little* v. *Phipps*, 208 Mass. 331. *Medford Trust Co.* v. *McKnight*, 292 Mass. 1, 31.

Harding was not entitled to interest amounting to $231.11, which he charged and collected on notes that he took in part payment of his salary. There was no agreement between the corporation and himself authorizing him to charge

interest. *Daniels* v. *Briggs,* 279 Mass. 87, 93. *Silversmith* v. *Sydeman,* 305 Mass. 65.

The final decree was right in charging the defendants with the travelling expenses and with this interest on notes for his salary, but there was error in ordering the payment of one half of the total of these items, together with interest, to the plaintiffs. The bill, as we have said, was brought in the interests of the corporation. The plaintiffs have no direct or personal interest in the suit, excepting as the value of their stock might be enhanced by the return to the corporation of moneys that have been improperly taken by its officers. The bill cannot be maintained to enforce any personal rights of the plaintiffs. The primary and immediate beneficiary of a minority stockholders' suit is the corporation. It was error to order the payment of any portion of these sums to the plaintiffs. Whatever is found due from the defendants must be paid to the corporation. *Hayden* v. *Perfection Cooler Co.* 227 Mass. 589. *Bonner* v. *Chapin National Bank of Springfield,* 251 Mass. 401. *Hirshberg* v. *Appel,* 266 Mass. 98, 100. *Bacon* v. *Bacon,* 266 Mass. 462, 474. *Beaudette* v. *Graham,* 267 Mass. 7. *Sagalyn* v. *Meekins, Packard & Wheat Inc.* 290 Mass. 434. *Baker* v. *Allen,* 292 Mass. 169. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398.

The decree enjoined the defendants from paying out any money or other assets of the corporation or from making any contracts in behalf of the corporation unless authorized by a board of directors chosen by the stockholders. The defendants hold one half of the outstanding stock, and there was no error in preventing them from continuing in sole control of the company to the exclusion of the plaintiffs, the remaining stockholders. *Albert E. Touchet, Inc.* v. *Touchet,* 264 Mass. 499, 507, 508. *Lydia E. Pinkham Medicine Co.* v. *Gove,* 298 Mass. 53, 62. If the stockholders are unable to agree upon the selection of directors and other corporate officials then resort may be had to another remedy. G. L. (Ter. Ed.) c. 155, § 50. *Cook* v. *Cook,* 270 Mass. 534. *L. P. Hollander Co. Inc., petitioner,* 301 Mass. 278.

Harding had in July, 1930, started a business under the name of the Pro-Co Products Company for the manufacture and sale of varnishes and japans substantially similar to those sold by the corporation. This business Harding incorporated in October, 1930. The goods were manufactured and shipped by The George H. Shaw Company which was paid a fair amount for the services rendered, except for the preparation of samples the cost of which the master was unable to determine. The Pro-Co Products Company was dissolved in 1932. There is nothing contained in the master's report to show that Harding had since the last mentioned date attempted or even intended to set up any business competing with that of the Shaw company. There is no basis for that part of the decree that enjoins the defendants, while acting as agents or employees of the company, from organizing or being affiliated with any business in competition with the Shaw company. One is not required to wait until he is injured before he can apply to a court of equity for relief, but he is not entitled to seek relief unless the apprehended danger is so near as at least to be reasonably imminent. *Hotel & Railroad News Co.* v. *Clark*, 243 Mass. 317. *Sturtevant* v. *Ford*, 280 Mass. 303, 316.

The provision of the final decree permanently enjoining the defendants from using any knowledge acquired or information gained as agents or officers of the corporation for their individual gain or to the detriment of the company is not supported by the record. The decree is not only too broad in that it enjoins Harding forever from utilizing for his own livelihood whatever skill and ability he might have developed during many years of experience while an officer of the corporation, *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182; *Manton-Gaulin Manuf. Co. Inc.* v. *Colony*, 255 Mass. 194, but it is not shown to be necessary for the protection of the corporation — even if we assume that, during his years of employment by the corporation, Harding acquired any confidential information and the corporation would have the right to enjoin its disclosure — because there is nothing contained in the master's report to show

that either defendant intends to use such information to the detriment of the corporation. *Aberthaw Construction Co.* v. *Cameron*, 194 Mass. 208, 215. *Rosenthal* v. *Shepard Broadcasting Services, Inc.* 299 Mass. 286. *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1.

The final decree ordered the corporation to pay to the plaintiffs the sum of $1,500 for fees and disbursements of their counsel, and that this amount be taxed as costs as between solicitor and client. In minority stockholders' bills decrees have frequently provided for the payment to the plaintiff by the corporation, out of the funds to be paid to it by the defendant, something by way of reimbursement for counsel fees incurred by the plaintiff in the prosecution of the suit in behalf of the corporation. *Davis* v. *Bay State League*, 158 Mass. 434. *Shannon* v. *Shepard Manuf. Co. Inc.* 230 Mass. 224, 236. *Carlson* v. *Revere Beach County Fair & Musical Railway*, 227 Mass. 291. *Guay* v. *Holland System Hull Co.* 244 Mass. 240. *Beaudette* v. *Graham*, 267 Mass. 7. *Sagalyn* v. *Meekins, Packard & Wheat Inc.* 290 Mass. 434, 441. But the basis for the allowance of counsel fees is that an expense incurred by one, resulting in the creation of a fund for the general benefit of many other persons, ought not to be borne entirely by the one whose action has resulted in the realization of such a fund, and that it is equitable that a part of the expense should be paid out of the fund. Here the payment was ordered to be made by the corporation apparently out of its own funds, though the decree makes no provision for the payment of anything by the defendants to the corporation. Even if payment was ordered to be made by the defendants to the corporation, if the court in its discretion determined that the plaintiffs should have a reasonable allowance on account of the services of counsel, then such an allowance ought to be payable only out of the proceeds of the suit received by the corporation. If the notes for salary held by Harding, which at the time of the hearing before the master amounted to $2,750, have not been paid, then Harding has a right to set off the principal of these notes against any sum that might be due to the corporation,

*Daniels* v. *Briggs,* 279 Mass. 87, 95, and if no funds were then due to the corporation, no allowance should be made for fees or disbursements of counsel.

The interlocutory decree was wrong in sustaining the plaintiff's exception to the admission by the master of evidence showing the fair value of Harding's services. The interlocutory and final decrees must be reversed and a new decree entered in accordance with this opinion.

*Ordered accordingly.*