Anita E. HEISE

v.

EARNSHAW PUBLICATIONS, Inc., a Massachusetts corporation, Albert C. Riedell and Walter T. Hudson.

Civ. No. 51-204.

United States District Court
D. Massachusetts.

April 13, 1955

lications, Inc., a Massachusetts corporation, hereinafter called the company, for many years when 51% of the company's stock was held by one Dane. While there were other managing employees, the defendants felt that they themselves were "the company."[1] After Dane's death, in December 1948, his stock was bought by the defendants, pursuant to a partnership agreement between them, discussed *infra*. Thereafter they took over the duties of the remaining managing employees. Prior to this each defendant had been paid an annual salary of $20,000. For the last two years before the purchase they had also received an extra $5,000 apiece, which counsel agreed was a bonus.

Upon the acquisition of the Dane stock the four directors consisted of themselves, their personal attorney, Mr. Smith, and one other. The defendants, Smith, and the company's auditor, discussed the matter, and concluded that the defendants' salaries should be increased by $7,500 apiece, as the amount saved by eliminating the other managerial employees. Even if this had not been "cut and dried" in advance, which I find it was, the record warrants, and certainly does not contradict, the inference that this substantial increase in salary was voted by the defendants, as directors, to themselves. In other words, I find the circumstances in all material respects, except the possible question of good faith, similar to those in Sagalyn v. Meekins, etc. Inc., 290 Mass. 434, 195 N.E. 769. Presumptively if the defendants were already working full time for their previous salary, and the other managing employees were earning theirs, the defendants could not, in my opinion, in taking over their duties expand their own activities to be worth the full amount that all combined received before.[2]

Geo. B. Christensen, Chicago, Ill., Lyne, Woodworth & Evarts, Boston, Mass., for plaintiff.

Paul V. Power, Gaston, Snow, Rice & Boyd, Boston, Mass., for defendants.

ALDRICH, District Judge.

This is a minority stockholder's suit, based on diversity of citizenship. The defendants, Riedell and Hudson, hereinafter called the defendants, were employees of the defendant Earnshaw Pub-

---

1. The testimony that the defendants felt they were "indispensable" is to be compared with the testimony that they feared that they would lose their jobs if any one else obtained control of the Dane stock.

2. Dane himself was one of these salaried employees. He was a prominent banker, with ability and financial connections. Another, who was the active manager, "was a man of knowledge." Through no fault

It is no answer that the defendants no longer received the $5,000 bonus. So far as appears this bonus was for some particularly good years, which did not reoccur after the defendants took over the entire management. Viewing the defendants' testimony as a whole, which I found quite interesting, their concept was, after they obtained control of the company, that it was pretty much theirs to do with as they pleased and without due regard for their fiduciary duties as directors.

■■ The above findings are without consideration of the partnership agreement, to which I now turn. There was a written agreement, dated January 1950, after the defendants had raised their salaries. This writing did not include the entire agreement, which had already culminated into an oral understanding at the time the defendants bought the stock in 1948. A partnership agreement to hold stock is not illegal per se. Brightman v. Bates, 175 Mass. 105, 55 N.E. 809. However, the defendants' oral agreement went beyond that. I find, based on the defendants' testimony that they bought this stock to keep their jobs, and on their subsequent conduct, and testimony, that it was part and purpose of this agreement that each should, as directors, vote in their "common cause" (Riedell), to continue the other as an employee, and at high and equal pay, irrespective of the value of his services.[3] The agreement was to last 25 years, unless one of them sooner died. I find and rule that this was an unlawful purpose. Guernsey v. Cook, 120 Mass. 501; Hellier v. Achorn, 255 Mass. 273, 151 N.E. 305, 45 A.L.R. 788; West v. Camden, 135 U.S. 507, 10 S.Ct. 838, 34 L.Ed. 254.

■ Even if the defendants acted in utmost good faith, under the circumstances they could not raise their salaries beyond their fair value. Sagalyn v. Meekins, etc., Inc., supra. In addition, I find that they were neglectful of their fiduciary duties and did not act in good faith, (except towards each other.) This finding is based not only on the improper known purpose of the partnership agreement, but on the conclusion I draw that the defendants knew they were not reasonably worth, between them, the additional $15,000 that had been paid to Dane and the other managing employees, which their death or discharge "saved" the company.

■ The question is, where is the burden of proof? If it were just a question of an excessive salary voted in good faith, the burden of proving to what extent it was excessive would be on the plaintiff. Meyer v. Fort Hill Engraving Co., 249 Mass. 302, 143 N.E. 915. I believe a different situation prevails here. Because of the defendants intentional breach of duty it would be possible for me to rule that their entire raise in pay was forfeit. See Lydia E. Pinkham Medicine Co. v. Gove, 303 Mass. 1, 4, 20 N.E.2d 482. Consequently I think it at least appropriate to place the burden on them to justify what they received. Cf. Daniels v. Briggs, 279 Mass. 87, 180 N.E. 717. There was very little evidence on this subject. The defendants did not appear, and offered no explanation for their absence. I cannot affirmatively find more than $2,500 of their $7,500 raises to have been justified. I accordingly charge them with $10,000 a year for six years (1949–1954), with interest. If this ruling is wrong, and the burden as matter of law must be on the plaintiff, she has satisfied me that $2,500 of each $7,500 increase was excessive, a total of $30,000.

---

of the defendants they were not, and could not be, replacements for this loss even if they were capable, as to which there was no evidence, of putting in whatever extra hours may have been required without sacrificing their other duties.

3. "Q. You would put up money [to buy the stock] on a fifty-fifty basis, and would take out, either by way of earnings, salary, commissions or dividends, on a fifty-fifty basis; is that not right? Hudson: Well, it would have to be that way, yes * * * We each felt it would be dishonest to each other to try and do anything else."

■ The plaintiff next claims that the defendants were remiss in their duty to send her annual statements. Whatever delay or difficulty the plaintiff has suffered, I do not see that she has been financially damaged, and she does not now so assert.

■ Next the plaintiff claims that the defendants dissipated something in excess of $10,000 of the company's surplus during the year 1950. I am unable to follow, and do not adopt, the plaintiff's contentions in this regard.

■ Finally, the plaintiff charges that Mr. Smith, who was the defendants' personal attorney, brought into the picture by them in December, 1948, in connection with their purchase of the Dane stock, was paid for his services in so doing from the corporate till. This, of course, would have been highly improper. Sagalyn v. Meekins etc., Inc., supra. The evidence on this is a bit singular. During the deposition the defendants, somewhat jointly, testified that they did not personally pay Smith, and that they believed the company paid him for this. Riedell further testified the company paid him an annual amount, or retainer. Mr. Smith interposed, and denied this. It appeared elsewhere in the deposition that the company paid in 1951, $1,150 for "legal and accounting expenses", and in 1950, $1,706 for the same, which included Mr. Smith. It appeared at the trial, through annual statements for 1953 and 1954, that there was paid for legal and accounting those years $1,153 and $1,200 respectively. The 1952 statement I do not have. Further, Mr. Smith testified at the trial that he rendered a bill to the company from the date the defendants acquired their stock to the end of 1949 in the amount of $1,000; and that this was solely for "general services and bookkeeping * * * [and was a] bill for an annual service." This certainly looks like "legal and accounting," and a retainer.

I was not impressed by Mr. Smith, and I find it difficult to reconcile the above. I can see no logical reason for denying that he received annual compensation from the company, if he did, which the record would seem to show. I can see no reason why some one should not have paid him for his services in connection with the defendants' acquisition of their stock and the subsequent preparation of the partnership agreement, but which both he and the defendants deny. However, mere disbelief of a witness does not establish an affirmative case, and the plaintiff has failed to satisfy me that Smith did receive anything from the company for the defendants' personal debt, or that what he did receive from the company was even prima facie improper. He is not a defendant, and I will therefore not apply the rule in Daniel v. Briggs, 279 Mass. 87, 180 N.E. 717, as to his receipts. I accordingly make no charge on this point.

■ There is one technical matter to be disposed of. The defendants brought out that the plaintiff started suit without formal demand on them or on the company. Since the recovery I allow is for unlawful payment to themselves, who were majority stockholders, and there was no majority of independent directors, no such demand was necessary. Daniels v. Briggs, supra. If there were any other technicalities, of pleading or otherwise, the defendants did not assert them at the trial. While they filed a motion to dismiss, this was presented and argued solely on the basis that the evidence did not, in substance, make out a case. With that I do not agree. The motion to dismiss is denied. At the hearing on the decree, as I stated at the trial, I will determine plaintiff's costs as between solicitor and client.