DOMINIC GASCUE AND HUGO FANUCCHI, APPELLANTS, *v.* SARALEGUI LAND & LIVESTOCK CO., A CORPORATION, AND EMILY SARALEGUI CARRICABURU, ARNOLD CARRICABURU, AND PETER SARALEGUI, RESPONDENTS.

No. 3712

April 9, 1953.                          255 P.2d 335.

See also 69 Nev. 245, 247 P.2d 874.

*Kearney and Adams,* of Reno, and *John P. Thatcher,* of Reno, for Appellants.

*Lester D. Summerfield* and *Harlan L. Heward,* of Reno, for Respondents.

## OPINION

By the Court, MERRILL, J.:

This is characterized by appellants as a derivative suit brought by them as minority stockholders of Saralegui Land & Livestock Company on behalf of that corporation and against its officers and members of its board of directors. In the complaint it was originally asserted that the board had failed and refused to call stockholders' meetings, to permit examination of the corporation books, to make financial reports or to declare dividends; that the appellants, accordingly, had been excluded from participation in the corporation's affairs and from any benefit therefrom. These complaints were all withdrawn prior to submission of the

case to the trial court. As submitted the suit simply sought cancellation of a stock certificate, allegedly issued without proper authority and payment back to the corporation of salary paid by the corporation, allegedly without proper authority. Judgment of the trial court, acting without jury, was for respondents and this appeal is from that judgment.

The Saralegui Land & Livestock Company is a small family corporation engaged in the sheep business in this state and in California. It was organized in 1932 by Antonio Saralegui. At the time of his death in 1938 those interested in the corporation were his four children and a niece, Candida. Of the children, the only one having any active concern with the conduct of the business was a daughter, Emily, who, assisting her father in many ways, had acquired a considerable knowledge of all phases of the business. Candida's function was largely that of cook and housekeeper for the family. Upon Antonio's death the corporation bought back all stock in the hands of the other three children and Emily and Candida proceeded to operate the corporation's affairs. Their stock holdings at this point were 17,793 shares each. Two shares were placed in the name of Samuel Tippett, their legal counsel. The three stockholders constituted the corporation's board of directors.

In 1938, following Antonio's death, a board meeting was held at which all members were present. Emily was appointed general manager of the business at a salary the amount of which was left to be determined by future action of the board. Subsequently Emily married respondent Arnold Carricaburu and Candida married appellant Dominic Gascue. In 1940 Candida died leaving her stock interest divided between her husband and one Kennedy through whom appellant Fanucchi has secured his stock interest.

In March, 1941, after Candida's death and before the vacancy thereby created in the board had been filled, two

board meetings were held, attended by Emily and Tippett. At the first of these the board fixed the amount of salary due Emily for past services at $5,543.07. At the second meeting the board accepted Emily's offer to purchase 5,000 shares of treasury stock for the sum of $5,500. In September, 1941, the board vacancy having been filled by the appointment of one of Emily's brothers, a board meeting was held attended by Emily and Tippett at which Emily was voted a salary of $200 a month.

It is contended that the action taken by the board in 1941 was illegal for lack of a competent board (as to the first two meetings) and lack of a quorum (as to all three meetings) since Emily, as is contended, was disqualified by interest from participation. This suit seeks cancellation of the stock certificate for 5,000 shares issued to Emily and the return by her of all salary paid. For the purposes of this decision we accept, without deciding, that the action of the board was without proper authority. (It may be noted that certain elements of the asserted illegality have since been removed by statute. 1951 Stats. of Nev., ch. 220, p. 328.) In any event the judgment of the trial court must be affirmed.

As to the return of salary the record demonstrates:

First: The action of the board, whether authorized or not, was without fraud. Such was the determination of the trial court and the facts abundantly support it. The action having been taken pursuant to action taken in 1938 at a meeting attended by Candida, good faith can hardly be questioned.

Second: Emily's services and management were of substantial value to the corporation and to its stockholders. She was an experienced and competent operator and was so recognized by those with whom she dealt. Taking hold as manager at a time when the corporation was in debt and of questionable solvency she has through efforts over a period of 12 years, wiped out all

outstanding indebtedness and increased the capital of the business to a value of over $200,000.

Third: Emily was entitled to compensation for her services. This was recognized by formal action of a competent board in 1938. It was upon this basis that she has served as general manager from the outset.

Fourth: $200 a month was not excessive. It was, in fact, modest. On occasions Emily, at this figure, was being paid less than was paid to the company's sheep-herders.

It would, we feel, be manifestly inequitable to demand that, for an apparently innocent failure to comply with the technical formal requirements of corporate action, Emily be held to have contributed her valuable services for 12 years without right to compensation. Under circumstances substantially identical as to lack of authority but far less appealing as to equitable considerations it has been held: "An officer whose compensation is neither excessive nor unreasonable cannot be required to pay back any part of it to the corporation." Shaw v. Harding, 306 Mass. 441, 28 N.E.2d 469.

As to the stock certificate, the record indicates that at the time of its issuance the stock had a book value of $2.25 a share although the last stock transfers, three years earlier, had been through acquisition of 14,400 shares from the other three Saralegui children at a total cost of $13,412. Appellants contend that the certificate was issued for the purpose of giving Emily corporate control. However, the trial court expressly found, "Despite the wording of the [corporate] resolution, which recites that the stock was issued for the sum of $5,543.07, it is the fact that Emily Saralegui acted on Mr. Tippett's advice and took the stock for money owing to her for back wages which had never been previously paid to her." It may well be questioned, however, whether in the light of the stock's book value and the agreed amount of the salary then due such compensation was not excessive and subject to partial remission.

However, regardless of the light in which the stock issuance be viewed, neither lack of authority to issue the certificate nor fraud may here be asserted by these appellants.

Appellant Gascue is clearly barred by laches. See: 18 C.J.S., Corporations, sec. 569, p. 1290. The record conclusively demonstrates that in 1942 he acquired full knowledge of the action of the board taken in 1941. This suit was not commenced until 1948, a period well beyond that of our statute of limitations, and was not brought on to trial until 1951, during all of which time Gascue as stockholder had enjoyed the benefits of Emily's management. That the corporation was under the control of Emily and therefore in no position to sue in its own behalf does not relieve him of his own neglect. Beal v. Smith, 46 Cal.App. 271, 189 P. 341.

Appellant Fanucchi was not a stockholder at the time of the board action of which he now complains; nor did his stock interest thereafter devolve on him by operation of law. The right of a stockholder under these circumstances to maintain a derivative action on behalf of the corporation has never been decided in this state and other jurisdictions are in direct conflict upon the point. See: Ann. 148 A.L.R. 1090. Since Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827, the rule in the federal courts has operated to preclude such an action by such a party plaintiff. With reference to that rule it was stated by Commissioner Roscoe Pound in Home Fire Insurance Co. v. Barber, 67 Neb. 644, 93 N.W. 1024, 1028, 60 L.R.A. 927, 108 Am.St.Rep. 716:

"Sound reason and good authority sustain the rule that a purchaser of stock cannot complain of the prior acts and management of the corporation. * * * The rule has its foundation in a sound and wholesome principle of equity, namely, that the rules worked out by chancellors in furtherance of right and justice shall not be used, because of their technical character, as rules to

reach inequitable or unjust results. Resting on this basis, 'the value and importance of the rule * * * are constantly manifested.' [authority] The right of the stockholder to sue exists because of special injury to him for which otherwise he is without redress. If his interest is trifling, and the injury thereto of no consequence, he cannot sue to compel righting of wrongs to the corporation. [authority] Hence there is obvious reason for holding that one who held no stock at the time of the mismanagement ought not to be allowed to sue, unless the mismanagement or its effects continue and are injurious to him, or it affects him specially and peculiarly in some other manner. [authority] Except in such cases, the purchaser ought to take things as he found them when he voluntarily acquired an interest. If he was defrauded in the purchase, he should sue the vendor. As to the corporation and its managers, so long as he is not injured in what he got when he purchased, and holds exactly what he got and in the condition in which he got it, there is no ground of complaint. [authority]"

This court in one sense has already indicated its approval of the federal rule through adoption of that rule as a rule of civil procedure effective January 1, 1953. Rule 23 (b) N.R.C.P. In the absence of such a rule the question is whether Hawes v. Oakland should here be followed.

We note that neither Fanucchi nor his predecessor, Kennedy, took the witness stand. The record is silent as to the dates on which either of them discovered the wrongs of which Fanucchi now complains; as to whether either of them was subject to the bar of laches; as to the circumstances under which Fanucchi's stock interest was acquired. That interest was acquired but 12 days before commencement of this suit. If it cannot be said that it was acquired primarily for purposes of litigation it would appear, at least, that at the time

of acquisition there was intent to litigate. The only stockholder similarly situated whom Fanucchi's litigation might affect is appellant Gascue, whose laches have barred his independent right to complain. Equity can hardly avoid a dubious study of the hands which this litigant offers for inspection. Under the particular facts of this case we conclude that Hawes v. Oakland should be followed.

Judgment affirmed with costs.

EATHER, C.J., and BADT, J., concur.