RORY BEDORE, on Behalf of Himself, and on Behalf of SILVER STATE GAMING, INC., a Nevada Corporation, Appellant/Cross-Respondent, v. BRUCE FAMILIAN, an Individual; JON ATHEY, an Individual; and SILVER STATE GAMING, a Nevada Corporation, Respondents/Cross-Appellants.

No. 42075

January 19, 2006          125 P.3d 1168

[Rehearing denied March 16, 2006]

*Bailey Merrill* and *John R. Bailey* and *David J. Merrill*, Las Vegas, for Appellant/Cross-Respondent.

*Beckley Singleton, Chtd.*, and *Daniel F. Polsenberg* and *Beau Sterling*, Las Vegas; *Curran & Parry* and *Stanley W. Parry* and *Joshua H. Reisman*, Las Vegas, for Respondents/Cross-Appellants.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, GIBBONS, J.:

In this appeal and cross-appeal, we consider whether the district court has authority to order a corporate buy-out as the result of a breach of fiduciary duty and the appropriate grounds for a corporation's indemnification of its directors. We conclude that while the district court has authority to direct corporate buy-outs, it abused its discretion in doing so based on the facts of this case. Before ordering a corporate buy-out as an equitable remedy, the district court must find that the directors' misconduct warranted the corporation's dissolution. In this case, the directors breached their fiduciary duties by taking excess salaries and usurping a corporate opportunity. This misconduct did not amount to fraud or gross mismanagement justifying an extreme remedy such as a buy-out. The district court sufficiently remedied the directors' misconduct by ordering the return of the excess salaries to the corporation and issuing an injunction. Finally, we conclude that corporate directors who act in bad faith are not entitled to indemnification. Accordingly, we affirm in part, reverse in part, and remand.

### FACTS

Rory Bedore, Bruce Familian, and Jon Athey incorporated City Stop, Inc., for the purpose of purchasing and managing convenience stores in Clark County. Bedore and Familian subsequently incorporated Silver State Gaming, Inc., under NRS chapter 78A, as a closely held corporation.[1] Once City Stop had acquired several convenience stores, Silver State took over the gaming operations in each of those locations.

Due to some management disagreements, Familian and Athey offered to purchase Bedore's interest in Silver State, but Bedore would not sell his interest on the terms proposed. At a subsequent shareholders and directors meeting, Familian and Athey removed Bedore as a director and as president of Silver State. As the sole remaining directors, Familian and Athey elected themselves as president and secretary/treasurer, respectively.

Familian and Athey began looking for additional convenience stores to acquire or build in the name of a new entity, Nevada City Partner. As the only officers and directors of Silver State at the

---

[1]Originally, Bedore and Familian each held 50 percent of the shares. Athey later purchased 2.5 percent each from Bedore and Familian to become the third shareholder of Silver State.

time, they decided not to use Silver State as the gaming operator in the new convenience stores they anticipated acquiring, except on an interim basis until they obtained a license for their own separate gaming company.

Bedore, on behalf of himself and Silver State, filed a complaint in the district court against Familian and Athey. He alleged that Familian and Athey had breached their fiduciary duties by taking excessive salaries and usurping corporate opportunities.[2]

After a three-day bench trial, the district court orally ruled that Familian's and Athey's salaries were excessive and ordered them to return $138,296.84 to Silver State.[3] The district court also concluded that in pursuing an opportunity in the same line of business as that engaged in by Silver State, Familian and Athey had acted out of self-interest. The district court found that Bedore had proven by a preponderance of the evidence that the formation of a separate corporation to conduct gaming operations in the new convenience stores was a corporate opportunity that Silver State was financially able to undertake; the opportunity was in the same line of business and of practical advantage to Silver State; and that by embracing the opportunity, Familian's and Athey's self-interest would be brought into conflict with Silver State's interests. However, the district court also concluded that Bedore had failed to prove by clear and convincing evidence that Familian's and Athey's actions were intentional, malicious, and oppressive.

The court orally ordered the parties to participate in a blind bid process for the purchase of 100 percent of Silver State, with the company going to the highest bidder. Familian and Athey objected, arguing that the court did not have power to order a corporate buy-out in this case.

Between the time that the district court ordered the blind bids and the date the submissions were due, the parties disputed the terms and conditions of the bidding process. Specifically, the parties disagreed as to how Silver State's cash reserves would be distributed. The parties requested that the district court clarify the bidding process, but the court refused to do so. Upon opening the parties' submitted bids, the district court declared Bedore the win-

---

[2]We consider this complaint a shareholder derivative action under NRCP 23.1.

[3]In its written findings of fact and conclusions of law, the district court concluded that several factors indicated that Familian and Athey had breached their fiduciary duties by taking excessive salaries, including the amount of time Familian and Athey spent on Silver State's business, compensation received by officers of similarly situated corporations, Familian's and Athey's lack of unique or special abilities, and reasonable receiver fees paid by Silver State while in receivership. In a later proceeding, the district court found that $589.58 per day was a reasonable salary. The court calculated the excess portion set forth above by subtracting $124,401.38, the reasonable portion of their salaries, from the $262,698.22 received.

ner, as his $1.975 million bid was higher than Familian and Athey's joint bid of $1.375 million. The district court ordered that the sale take place by the end of the year and appointed a temporary receiver to protect Silver State's assets until the transaction was final.

Familian and Athey objected to the results, again arguing that the terms of the bidding process were unclear. Specifically, they contended that their bid was for the noncash corporate assets, excluding the cash reserves that Silver State had and would accrue before the sale's finalization. Those cash reserves were estimated at $800,000. Familian and Athey argued that Bedore's bid was higher only because it was based upon the total value of the corporation's shares, including cash reserves. After considering Familian and Athey's arguments, the district court upheld the bidding results, stating that the purchase was for the fair market value of the shares, not the noncash assets.

Bedore then moved the district court to order Familian and Athey to reimburse Silver State for the attorney fees and court costs it had paid for their defense in the underlying action. In this motion, Bedore argued that Familian and Athey were not entitled to indemnification under NRS 78.7502(2), which allows a corporation to indemnify officers and directors for good-faith actions performed in their official capacity, since they had acted in bad faith by taking excessive salaries from Silver State. After hearing the parties' arguments, the district court denied Bedore's motion, finding that Silver State had appropriately indemnified Familian and Athey.

Bedore timely delivered $1,836,703.16 to the court as payment for Familian's and Athey's shares.[4] Believing that Bedore should not personally benefit from the $138,296.84 reimbursement they owed to Silver State for taking excess salaries, Familian and Athey moved the court to require Bedore to pay the entire $1,975,000. The district court denied this motion as moot. The district court also awarded Bedore court costs in the amount of $29,664.08,[5] which further reduced the purchase price amount to $1,807,039.08. This timely appeal and cross-appeal followed.

## DISCUSSION

"This court has consistently provided that the district court's findings of fact will not be disturbed on appeal if they are sup-

---

[4]In particular, Bedore gave the district court three checks: $1,000,000, $661,779.06, and $174,924.10. The total, $1,836,703.16 reflects Bedore's bidding price of $1,975,000 minus $138,296.84, the amount Familian and Athey were ordered to reimburse to Silver State.

[5]The district court did not award attorney fees.

ported by substantial evidence."[6] The district court's conclusions of law, however, are reviewed de novo.[7]

### Grounds for corporate buy-out

Familian and Athey argue that the district court lacked the authority to order a corporate buy-out based solely on its determination that they had breached their fiduciary duties.[8] Familian and Athey further contend that even if the district court had the authority to order a buy-out in this case, it abused its discretion by not clarifying the basis on which the bids should be calculated. Bedore asserts that Familian and Athey waived their objections to the buy-out by participating in it.

While it is true that a party may patently waive an objection,[9] we conclude that Familian and Athey preserved this issue by making timely and proper objections before participating in the buy-out. We further conclude that the district court lacked discretion to order a buy-out in this case because Familian and Athey's misconduct in taking excess salaries and usurping a corporate opportunity did not justify such an extreme remedy.

Under NRS 78.650, a shareholder may request dissolution or appointment of a receiver when the corporation's directors are "guilty of fraud or collusion or gross mismanagement" or the "assets of the corporation are in danger of waste, sacrifice or loss through attachment, foreclosure, litigation or otherwise."[10] Also, NRS 78A.140(1)(a) allows shareholders of a close corporation to request dissolution or appointment of a receiver when division among the shareholders threatens "irreparable injury."

We have affirmed the district court's appointment of a receiver under NRS 78.650 when the two sole shareholders of a corporation sold their restaurant and effectively abandoned the corporation's business.[11] We also have affirmed the appointment of a receiver when a corporation's board of directors issued additional shares of stock in willful violation of the corporation's charter and statute and sold those shares to the defendant stockholder, giving him control of the corporation, without offering the plaintiff stockholder an opportunity to purchase a pro rata share of the new

---

[6]*Clark County v. Sun State Properties*, 119 Nev. 329, 334, 72 P.3d 954, 957 (2003).

[7]*Id.*

[8]Familian and Athey do not challenge the district court's determinations with respect to the breach of fiduciary duty findings.

[9]*Jefferes v. Cannon*, 80 Nev. 551, 553, 397 P.2d 1, 2 (1964).

[10]NRS 78.650(1)(b), (e).

[11]*Nishon's Inc. v. Kendigian*, 91 Nev. 504, 506, 538 P.2d 580, 581 (1975).

stock.[12] In another case in which all of a corporation's real and personal property had been sold so that the corporation was substantially without property or assets of any kind, we could "conceive of no clearer example of a corporation which 'ha[d] abandoned its business,' . . . [authorizing] a decree dissolving the corporation."[13]

Courts have recognized, however, that these traditional business remedies "have a substantial and adverse [e]ffect on" the interests of minority shareholders in a closely held corporation.[14] We have noted that the appointment of a receiver or the dissolution of a corporation is "a harsh and extreme remedy which should be used sparingly and only when the securing of ultimate justice requires it."[15] Further, other courts have recognized that "dissolution statutes do not provide the exclusive remedies for oppressed shareholders."[16] For example, remedies for violations of corporation law statutes, such as NRS 92A.380(2), that allow shareholders the right to dissent to corporate actions, such as mergers, are not limited to the statutes' enumerated remedies.[17] Thus, if another remedy is available to achieve the same outcome, the district court should not resort to dissolution or the appointment of a receiver.[18]

[Headnotes 4, 5]

A corporate buy-out is an example of such an alternate remedy. As recognized by the United States Court of Appeals for the Fifth Circuit, courts have the power to order corporate "buy-outs even in the absence of specific statutory authority."[19] But, the court may impose this remedy only if "it represents 'the only practical alternative' to dissolution and [if] some lesser remedy will not suffice."[20] If imposed, the court must ensure that the bidding

---

[12]*Peri-Gil Corp. v. Sutton*, 84 Nev. 406, 409, 442 P.2d 35, 37 (1968).

[13]*Foster v. Arata*, 74 Nev. 143, 158, 325 P.2d 759, 767 (1958).

[14]*Hollis v. Hill*, 232 F.3d 460, 467 (5th Cir. 2000).

[15]*Hines v. Plante*, 99 Nev. 259, 261, 661 P.2d 880, 881-82 (1983).

[16]*Hollis*, 232 F.3d at 468; *Masinter v. WEBCO Co.*, 262 S.E.2d 433, 439-40 (W. Va. 1980).

[17]*Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 14-15, 62 P.3d 720, 729 (2003).

[18]*Hines*, 99 Nev. at 261, 661 P.2d at 882.

[19]*Hollis*, 232 F.3d at 472; *see also Alaska Plastics, Inc. v. Coppock*, 621 P.2d 270, 274-75 (Alaska 1980); *Maddox v. Norman*, 669 P.2d 230, 237 (Mont. 1983); *Delaney v. Georgia-Pacific Corp.*, 564 P.2d 277, 288-89 (Or. 1977).

[20]*Bonavita v. Corbo*, 692 A.2d 119, 129 (N.J. Super. Ct. Ch. Div. 1996); *see also Davis v. Sheerin*, 754 S.W.2d 375, 380 (Tex. App. 1988) (holding that "under . . . general equity power, [courts] may decree a 'buy-out' in an appropriate case where less harsh remedies are inadequate to protect the rights of the parties").

process used in the buy-out is fair and reasonable.[21] Accordingly, the question is not whether the courts have the power to order a buy-out, but whether, based on the parties' misconduct, such power was appropriately exercised in a particular case.[22]

Here, Bedore proved by a preponderance of the evidence that Familian and Athey breached their fiduciary duties[23] by taking excess salaries[24] and usurping a corporate opportunity belonging to Silver State.[25] The district court ordered Familian and Athey to return the portion of their excess salaries to Silver State and issued an injunction preventing them from forming a separate corporation to run gaming operations at the proposed new convenience stores. These remedies were sufficient to prevent any further damage to Silver State. Therefore, we affirm the injunction and the order that Familian and Athey return the excess salaries to Silver State. However, we conclude that the district court abused

---

[21]*See Alaska Plastics*, 621 P.2d at 274-75; *Hammes v. Frank*, 579 N.E.2d 1348, 1355 (Ind. Ct. App. 1991) (stating that "[t]he trial court has full discretion to fashion equitable remedies that are complete and fair to all parties involved"); *Maddox*, 669 P.2d at 237; *Vorachek v. Citizens State Bank of Lankin*, 421 N.W.2d 45, 54-55 (N.D. 1988); *Delaney*, 564 P.2d at 288-89.

[22]*Maddox*, 669 P.2d at 237.

[23]*See Hoopes v. Hammergren*, 102 Nev. 425, 725 P.2d 238 (1986) (reasoning that a patient would have to prove that her doctor breached his fiduciary responsibilities by a preponderance of the evidence); *see also Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 958 (Del. 1985) ("unless it is shown by a preponderance of the evidence that the directors' decisions were primarily based on perpetuating themselves in office, or some other breach of fiduciary duty such as fraud, overreaching, lack of good faith, or being uninformed, a Court will not substitute its judgment for that of the board"). Although we have reasoned that "the term 'fraudulent' . . . encompasses a variety of acts involving breach of fiduciary duties," *Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 13-14, 62 P.3d 720, 729 (2003), and proof of fraud usually requires clear and convincing evidence, *see Lubbe v. Barba*, 91 Nev. 596, 600, 540 P.2d 115, 118 (1975), we conclude that in a corporate setting, preponderance of the evidence is the appropriate standard. Since corporate directors must already abide by a heightened standard of conduct, a complaining shareholder does not need to prove fraud or intentional misconduct by a higher evidentiary standard such as clear and convincing evidence.

[24]A director breaches his or her fiduciary duty to the corporation by taking excess salaries. *See Gascue v. Saralegui L. & L. Co.*, 70 Nev. 83, 86-87, 255 P.2d 335, 336 (1953) (determining that director's services as general manager were of substantial value to the corporation and award of $200 per month for her services was not excessive).

[25]Directors breach their fiduciary duty if they "exploit an opportunity that belongs to the corporation." *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 87, 734 P.2d 1221, 1225 (1987). An opportunity belongs to the corporation if it is one in which the corporation has an expectancy interest or property right. *Id.*

its discretion in ordering the additional equitable remedy of a corporate buy-out.

The dissension among the three shareholders did not threaten irreparable injury to Silver State, and Familian and Athey had not abandoned the business. Finally, Bedore did not request dissolution of Silver State in his complaint; rather, he asked the district court to issue a mandatory injunction forcing Familian and Athey to pay him reasonable compensation to buy out *his* interest in Silver State. Since the district court lacked the proper basis to order a buy-out, we reverse the results of the bidding process.

*Indemnification*

Bedore argues that the district court erred in not requiring Familian and Athey to reimburse Silver State for attorney fees it paid to defend them in the underlying action. We agree, given the district court's findings that Familian and Athey acted in bad faith.

Typically, the right to corporate indemnification of directors is statutory in nature.[26] The Delaware Supreme Court has reasoned that its "indemnification statute should be broadly interpreted to further the goals it was enacted to achieve."[27] It also noted that an indemnification statute's "larger purpose is 'to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.' "[28]

We adopt the Delaware Supreme Court's reasoning in interpreting Nevada's indemnification statute.[29] Under NRS 78.7502, a corporation may indemnify a corporate director in a pending or completed action if the director "[a]cted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation."[30] Indemnification, however, is not proper for claims on which the director is found liable to

---

[26]*See, e.g., Merritt-Chapman & Scott Corporation v. Wolfson*, 264 A.2d 358, 360 (Del. Super. Ct. 1970) (stating that "[n]o common law right to indemnification exist[s]").

[27]*Stifel Financial Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002).

[28]*Id.* (quoting *Folk on the Delaware General Corporation Law* § 145 (2001)).

[29]*See Colello v. Administrator, Real Est. Div.*, 100 Nev. 344, 347, 683 P.3d 15, 17 (1984).

[30]NRS 78.7502(2)(b).

the corporation, unless the district court determines that the director is fairly and reasonably entitled to indemnity under the circumstances.[31]

In addition to this statutory authority, Silver State's articles of incorporation and bylaws further establish indemnification guidelines. In particular, Silver State's articles state that a director will be personally liable for engaging in "acts or omissions which involve intentional misconduct, fraud or a knowing violation of law." Similar to NRS 78.7502(2), Silver State's bylaws allow the corporation to indemnify its directors for expenses related to a pending or completed action if they "acted in good faith and in a manner which [they] reasonably believed to be in or not opposed to the best interests of the corporation."

Here, the district court orally ruled that Familian and Athey appropriately used corporate funds to defend themselves in this litigation. However, in its findings of fact and conclusions of law, the district court found that Familian's and Athey's actions in taking excessive salaries constituted bad faith and intentional misconduct. Under NRS 78.7502(2) and Silver State's articles of incorporation and bylaws, Silver State directors and officers are not entitled to indemnification for conduct constituting bad faith and intentional misconduct. Therefore, the district court's oral ruling was in direct conflict with the terms of the statute and the corporation's articles and bylaws. In addition, the district court did not make specific findings on the appropriateness of indemnification in its findings of fact and conclusions of law. Because the district court erred in ruling that Familian and Athey were entitled to indemnification, we remand for the district court to determine the amount due to Silver State as reimbursement for covering the costs of the underlying action.

## CONCLUSION

We conclude that the district court did not have the discretion to order a corporate buy-out because the directors' misconduct in this case did not amount to fraud or gross mismanagement. We therefore reverse that portion of the district court's judgment confirming the results of the bidding process. However, we affirm as sufficient lesser remedies that portion of the district court's judgment imposing an injunction and ordering that the directors return their excess salaries to the corporation. Further, we conclude that the district court erred in ruling that Silver State properly indemnified Familian and Athey because of its determination that the

---

[31]NRS 78.7502(2).

directors had acted in bad faith. In addition, the district court failed to make specific findings on indemnification in its findings of fact and conclusions of law. Therefore, we reverse that portion of the district court's judgment pertaining to indemnification and remand for proceedings consistent with this opinion.[32]

MAUPIN and HARDESTY, JJ., concur.

---

[32]The chief judge is instructed to assign this case for further proceedings to the Business Court Division pursuant to EDCR 1.33(b).