'140 Nev., Advance Opinion 34

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CAPITAL ADVISORS, LLC, A UTAH LIMITED LIABILITY COMPANY; AND DANZIG, LTD., A NORTH CAROLINA CORPORATION, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT CAM GROUP INC., A NEVADA CORPORATION, Appellants, vs. WEI HENG CAI, AN INDIVIDUAL; AND WEI XUAN LUO, AN INDIVIDUAL, Respondents. | No. 84732 |



FILED

MAY 23 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

| | |
|---|---|
| CAPITAL ADVISORS, LLC, A UTAH LIMITED LIABILITY COMPANY; AND DANZIG, LTD., A NORTH CAROLINA CORPORATION, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT CAM GROUP INC., A NEVADA CORPORATION, Appellants, vs. WEI HENG CAI, AN INDIVIDUAL; AND WEI XUAN LUO, AN INDIVIDUAL, Respondents. | No. 85378 |

Consolidated appeals from district court orders granting a motion for judgment as a matter of law and awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

*Affirmed in part, reversed in part, vacated in part, and remanded.*

SUPREME COURT
OF
NEVADA

(O) 1947A

24-18072

Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno; Womble Bond Dickinson (US) LLP and Edward S. Kim, Irvine, California,
for Appellants.

Jones Lovelock and Nicole E. Lovelock and Sue Trazig Cavaco, Las Vegas; Brown Brown & Premsrirut and Puoy K. Premsrirut, Las Vegas; Ellenoff Grossman & Schole LLP and John Brilling Horgan and Fawn M. Lee, New York, New York,
for Respondents.

BEFORE THE SUPREME COURT, HERNDON, LEE, and BELL, JJ.

## OPINION

By the Court, LEE, J.:

It is well recognized that a corporation should be treated as a separate legal entity unless the corporate veil is pierced and the corporation is shown to be the alter ego of a controlling individual. Likewise, we have recognized the use of the alter ego doctrine where a subsidiary company is shown to be the alter ego of the parent company. We have yet to consider, however, whether officers and directors of a parent company can be held liable for actions taken by a wholly owned subsidiary of a wholly owned subsidiary without the use of the alter ego doctrine. We also have yet to consider whether shareholders may file derivative suits that compel the company to sue its own officers and directors based on actions implemented through a wholly owned subsidiary of a wholly owned subsidiary to the parent. We conclude that officers and directors of a parent company who allow a wholly owned subsidiary to take action adverse to the parent can be held liable without use of the alter ego doctrine. Such liability is imposed because directors and officers have a fiduciary duty to act in the best

interests of the parent company and its stockholders and thus cannot intentionally cause or knowingly fail to stop adverse actions by a wholly owned subsidiary company. We likewise hold that shareholders may file derivative suits against officers and directors of a parent company based on wrongful actions that occurred at a wholly owned subsidiary of a wholly owned subsidiary without asserting alter ego. As a result, fiduciaries at a parent company have a duty not to intentionally implement or knowingly permit a wholly owned subsidiary to effect a transaction that is unfair to the parent company on whose board they serve, regardless of the presence of intermediate subsidiaries between the parent and the subsidiary where the challenged action is alleged to have taken place. Because the district court found that officers and directors of a parent company cannot be held liable for actions taken by a wholly owned subsidiary without piercing the corporate veil, and because appellants presented sufficient evidence to defeat a motion for judgment as a matter of law as to some of their causes of action, we affirm in part, reverse in part, vacate in part, and remand the matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Appellants Capital Advisors, LLC, and Danzig, Ltd., filed a shareholder derivative action as minority shareholders of Cam Group, Inc. (CAMG) against nine CAMG officers and directors. Seven of the defendants refused to appear for their depositions, and the district court entered defaults against those defendants as sanctions. Respondents Wei Heng Cai (Ricky) and Wei Xuan Luo (Tracy) were the only defendants who proceeded to trial.

CAMG is a Nevada company and is the publicly traded U.S. parent holding company of a stack of Chinese subsidiary holding companies. At the relevant time, the structure of CAMG and its subsidiaries was as

SUPREME COURT
OF
NEVADA

(O) 1947A

follows: CAMG wholly owned China Agriculture Media Group Co., Ltd. (CAM Group); CAM Group wholly owned China Agriculture Media Hong Kong Group Co., Ltd. (CAM HK); and CAM HK owned 98% of China Agriculture Media Hebei Co., Ltd. (CAM Hebei). The only revenue-producing company in this stack was the subsidiary at the bottom, CAM Hebei. All of the other companies were holding companies.

Ricky served as the President and a member of CAMG's board of directors from April 21, 2012, to July 29, 2013. From November 16, 2012, to November 15, 2013, Tracy, Ricky's then-spouse, served as the CAMG Chief Financial Officer. Appellants alleged that, in 2013, Ricky arranged for and issued a $1.85 million unsecured loan at zero-percent interest to a company called Parko Ltd. Appellants further alleged that Tracy failed to fulfill her duties as CFO by failing to stop the loan to Parko.

The circumstances surrounding the alleged loan transaction were as follows. On July 15, 2013, Parko entered into a Share Purchase Agreement with a third entity called National Agricultural Holdings Limited (NAHL) to acquire a majority stake in NAHL. Ten days later, a CAM company made the challenged loan to Parko. Appellants allege that the loan was made by CAMG, and respondents allege that the loan was made by CAM HK. Appellants further alleged that Parko used the loan to help fund the purchase of NAHL. Appellants contended that the loan drained approximately 80% of the cash reserves for the consolidated CAM companies.[1]

_____

[1]In 2014, one of the CAM companies made additional zero-percent interest, unsecured loans to Parko. The 2014 loans are not at issue in the present appeal, but we note them for context.

After making the challenged loan to Parko, Ricky resigned from CAMG to focus on developing business opportunities for NAHL and his own company Precursor Management Inc. (PMI), which in pertinent part managed an equity fund. Through the equity fund, PMI made loans structured as a convertible bond to Parko that were repayable with shares of NAHL. Parko later transferred shares of NAHL to PMI as a part of this transaction. Ricky's new spouse (not Tracy) later joined NAHL as a director.

Following discovery and pretrial motions, appellants brought the following causes of action to trial: (1) breach of fiduciary duty and self-dealing, (2) breach of fiduciary duty for usurping CAMG's business opportunities, (3) corporate waste, (4) civil conspiracy, and (5) unjust enrichment. There was no allegation of alter ego.

Appellants presented the testimony of a CAMG board member, Enrique Marchese, who testified that the loan to Parko was made by CAMG and approved by the board of directors. Marchese also testified that he was concerned by the fact that the board was asked in November to backdate approval of the loan to Parko, which had been made a few months earlier in July.

After appellants rested, Ricky and Tracy moved for judgment as a matter of law pursuant to NRCP 50(a). The district court granted the motion as to all causes of action. The district court permitted appellants to submit their remaining claims for damages against the seven defaulted defendants to the jury. The jury awarded appellants $130 million on the defaulted claims. Post-trial, based on its NRCP 50(a) dismissal, the district court awarded Ricky and Tracy over $2 million in attorney fees and costs

SUPREME COURT
OF
NEVADA

(O) 1947A

5

pursuant to NRS 18.010(2)(b) and NRS 78.751 (requiring corporations to indemnify directors and officers when successful in defense).

## DISCUSSION

Appellants assert that officers and directors of a parent corporation can be held liable for breaching their fiduciary duties based on the wrongful conduct of a wholly owned subsidiary and that, consequently, the district court erred by granting the respondents' motion for judgment as a matter of law under NRCP 50(a). Pursuant to NRCP 50(a), "the district court may grant a motion for judgment as a matter of law if the opposing party has failed to prove a sufficient issue for the jury, so that his claim cannot be maintained under the controlling law." *Nelson v. Heer*, 123 Nev. 217, 222, 163 P.3d 420, 424 (2007) (internal quotation marks omitted); *see also Bielar v. Washoe Health Sys., Inc.*, 129 Nev. 459, 471, 306 P.3d 360, 368 (2013) ("To overcome a motion brought pursuant to NRCP 50(a), the nonmoving party must have presented sufficient evidence such that the jury could grant relief to that party." (internal quotation marks omitted)). We review de novo a district court's order under NRCP 50(a), "view[ing] the evidence and all inferences in favor of the nonmoving party." *Nelson*, 123 Nev. at 222-23, 163 P.3d at 424-25. "If there is conflicting evidence on a material issue, or if reasonable persons could draw different inferences from the facts, the question is one of fact for the jury and not one of law for the court." *Broussard v. Hill*, 100 Nev. 325, 327, 682 P.2d 1376, 1377 (1984).

Appellants allege Ricky and Tracy, as officers or directors of CAMG, are liable for their actions regarding the challenged loan to Parko. Directors and officers are not liable to the corporation or its stockholders unless the claimant rebuts the business judgment rule and "show[s] a breach of fiduciary duty involving intentional misconduct, fraud, or a knowing violation of the law." *Guzman v. Johnson*, 137 Nev. 126, 131, 483

P.3d 531, 537 (2021); *see also* NRS 78.138(7). As to the first requirement, "[t]he business judgment rule states that directors and officers, in deciding upon matters of business, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation." *Chur v. Eighth Jud. Dist. Ct.*, 136 Nev. 68, 71, 458 P.3d 336, 340 (2020) (internal quotation marks omitted). The business judgment rule's presumption of good faith may be rebutted by showing the director or officer "had a personal interest in the transaction," *Guzman*, 137 Nev. at 132, 483 P.3d at 537, or by showing "that the director failed to exercise due care in reaching the decision," *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct.*, 133 Nev. 369, 377, 399 P.3d 334, 343 (2017) (internal quotation marks omitted). As to the second requirement, "[i]n Nevada, directors and officers owe the fiduciary duties of care and loyalty to the corporation." *Chur*, 136 Nev. at 72, 458 P.3d at 340. In order to establish a knowing violation of law or intentional misconduct pursuant to NRS 78.138(7), "the claimant must establish that the director or officer had knowledge that the alleged conduct was wrongful." *Id.* at 75, 458 P.3d at 342.

*Officers and directors of a parent corporation may be liable for intentionally implementing or knowingly permitting actions by a wholly owned subsidiary that are adverse to the parent corporation and its stockholders*

Before considering the district court's grant of judgment as a matter of law, we must first address the district court's determination that directors and officers of a parent company cannot be liable for actions of a subsidiary without an allegation of alter ego. The district court found that the subsidiary CAM HK made the challenged loan to Parko and, therefore, that Ricky and Tracy could not be held liable without appellants first piercing the corporate veil. We disagree.

"[D]erivative suits allow shareholders to compel the corporation to sue and to thereby pursue litigation on the corporation's behalf against the corporation's board of directors and officers, in addition to third parties." *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 633, 137 P.3d 1171, 1179 (2006) (internal quotation marks omitted), *abrogated on other grounds by Chur*, 136 Nev. 68, 458 P.3d 336, *and Guzman*, 137 Nev. 126, 483 P.3d 531. As outlined above, a claimant must show that an officer or director breached a fiduciary duty. *See Guzman*, 137 Nev. at 131, 483 P.3d at 537.

Similar to other courts that have considered the issue, we adopt the logic of *Grace Bros., Ltd. v. Uniholding Corp.* and conclude that officers and directors of a parent corporation can breach their fiduciary duties by intentionally implementing or knowingly permitting actions adverse to the parent corporation through a wholly owned subsidiary. *See* No. Civ.A. 17612, 2000 WL 982401, at *12 (Del. Ch. July 12, 2000) ("To the extent that members of the parent board are on the subsidiary board or have knowledge of proposed action at the subsidiary level that is detrimental to the parent, they have a fiduciary duty, as part of their management responsibilities, to act in the best interests of the parent and its stockholders."); *In re: Bayou Steel BD Holdings, LLC*, 651 B.R. 179, 185 (Bankr. D. Del. 2023) (recognizing that directors of a parent company who controlled operations of a wholly owned subsidiary could breach fiduciary duties to the parent company even if the challenged actions took place through the subsidiary); *Refco Grp. Ltd. v. Cantor Fitzgerald, LP*, No. 13 Civ. 1654(RA), 2014 WL 2610608, at *20 (S.D.N.Y. June 10, 2014) (same).

We agree with the Delaware Court of Chancery and hold that "[d]irectors of a parent board can breach their duty of loyalty if they purposely cause—or knowingly fail to make efforts to stop—action by a

wholly-owned subsidiary that is adverse to the interests of the parent corporation and its stockholders." *Grace Bros.*, 2000 WL 982401, at *1. It is unquestionable that the value of a parent company may be in part or in whole derived from its subsidiaries. Therefore, an action that harms a wholly owned subsidiary by diminishing its value may diminish the value of intermediate subsidiaries and, in turn, may diminish the value of the ultimate parent company. Thus, it is reasonable to extend derivative theories of harm to a parent based on claims from the wholly owned subsidiary of a wholly owned subsidiary. And we reason that a breach can occur even if the challenged actions were implemented through a wholly owned subsidiary that is separated from the parent company by one or more intermediate wholly owned subsidiaries. As a result, fiduciaries at a parent company have a duty not to intentionally implement or knowingly "permit a wholly-owned subsidiary to effect a transaction that is unfair to the parent company on whose board they serve," regardless of the presence of intermediate wholly owned subsidiaries between the parent and the subsidiary where the challenged action is alleged to have taken place. *See Grace Bros.*, 2000 WL 982401, at *13; *see also Bayou Steel*, 651 B.R. at 185 (refusing to adopt the "uncontrollable child" theory of parent-subsidiary relationships and instead adopting the rule from *Grace Bros.*).

We note that this theory of liability is predicated upon an officer or director of a parent company breaching their fiduciary duty to the parent company. This liability is separate and apart from claims seeking to pierce the corporate veil by application of the alter ego doctrine. Likewise, the amount of control is that which officers and directors are normally expected to maintain and not that the fiduciary controlled the parent or subsidiary as an alter ego of themselves. *Grace Bros.*, 2000 WL 982401, at *12

SUPREME COURT
OF
NEVADA

(O) 1947A

9

("Although the defendants-directors would have me find that they were powerless to control the actions of UniHolding's wholly-owned subsidiary, they have not supported that implausible assertion with legal authority, and I hesitate to adopt an 'uncontrollable child' theory of parent-subsidiary relations."). The theory of liability runs from the directors and officers of the parent company to the corporation itself, as is proper in a derivative suit.

Turning to the district court's determination in this case, the dispute as to which CAM entity made the challenged loan is not dispositive. Regardless of which entity made the loan, Ricky and Tracy had a fiduciary duty not to intentionally cause or knowingly allow a loan by CAMG or its wholly owned subsidiaries that was adverse to the interests of CAMG and its shareholders. Because appellants may assert derivative suits through multiple layers of subsidiaries against the parent company's directors and officers, and the directors and officers may not escape liability for actions they intentionally implement or knowingly fail to stop at the wholly owned subsidiary level, we conclude that the district court erred by finding that appellants could not maintain any cause of action against respondents based on the finding that the wholly owned subsidiary CAM HK made the loan. We next consider the district court's grant of judgment as a matter of law to each of the causes of action against Ricky and Tracy.

*Breach of fiduciary duty and self-dealing*

As outlined above, to hold Ricky and Tracy liable as directors and officers of CAMG, appellants had to rebut the business judgment rule and show a breach of a fiduciary duty that involved intentional misconduct, fraud, or a knowing violation of the law. Appellants presented evidence that Ricky had a personal interest in the challenged loan to Parko and thus rebutted the business judgment rule for the purposes of evading judgment

as a matter of law. *See Guzman*, 137 Nev. at 132, 483 P.3d at 537. After Parko obtained the loan and completed its purchase of NAHL shares, it transferred over 10 million shares to Ricky's company PMI. Appellants also rebutted the business judgment rule as to Tracy when evidence was presented that she did not exercise due care. *See Wynn*, 133 Nev. at 377, 399 P.3d at 343. Tracy testified that she did not take any action to fix the internal company controls for monitoring the dispensation of assets, and there was evidence she knew of the loan before it was made, knew the challenged loan was a potential violation of federal law, specifically the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, and still she did nothing. There was also conflicting evidence as to whether she consulted with attorneys and auditors before or only after the loan was made. Thus, it is unclear whether her actions were made on an informed basis.

As to a breach, there was evidence that Ricky and Tracy knew of the loan before it was made and that Ricky and some of CAMG's board approved the loan before it was made and attempted to obtain backdated approval for the loan from the full board.[2] There was also evidence that CAMG made the challenged loan and that Tracy, while still Ricky's spouse, was CFO of CAMG at the time but knowingly failed to take action to stop the loan. Lastly, there was evidence presented that Ricky and Tracy had knowledge of CAMG's code of ethics, which prohibited self-interested and related-party transactions, and thus that Ricky and Tracy intentionally engaged in misconduct.

---

[2]We note that respondents argue that Tracy's inaction was not the cause of the damage. There is conflicting evidence here; thus, this was a question for the jury.

Appellants also presented evidence of damage to the corporation. The loan, which transferred approximately 80% of all cash reserves, was initially made with zero-percent interest and was unsecured by collateral. Although the loan's terms were subsequently updated to include interest, the interest did not backdate to the issuance date. CAMG or CAM HK was thus deprived of reasonable interest from the loan until the terms were amended. There was also conflicting evidence as to whether the loan was repaid.[3] Based on all of the above, we conclude that appellants presented sufficient evidence by which a jury could grant relief, and the district court erred by granting judgment as a matter of law as to the claim for breach of fiduciary duty and self-dealing.

*Usurpation of business opportunity*[4]

"Directors breach their fiduciary duty if they 'exploit an opportunity that belongs to the corporation.'" *Bedore v. Familian*, 122 Nev. 5, 12 n.25, 125 P.3d 1168, 1173 n.25 (2006) (quoting *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 87, 734 P.2d 1221, 1225 (1987)). "An opportunity belongs to the corporation if it is one in which the corporation has an expectancy interest or property right." *Id.* In order to demonstrate usurpation or diversion of corporate opportunity, a claimant must demonstrate that the corporation "had the financial ability to acquire the asset or property."

---

[3]We note concerns with foundation and authenticity when respondents submitted a screenshot of a bank account in a foreign language as evidence that the loan was repaid. The witness testified that the document was meaningless to him. Regardless, there was conflicting evidence as to repayment, and thus the admission of this evidence does not alter our conclusion.

[4]As appellants do not challenge the judgment in favor of Tracy for usurpation of business opportunity, we do not consider it.

*Astarte, Inc. v. Pac. Indus. Sys., Inc.*, 865 F. Supp. 693, 707 (D. Colo. 1994). There must be "a practical, not a mere theoretical, basis for the opportunity." *Id.*

*CAMG's opportunity to invest in NAHL*

Appellants assert there was evidence that CAMG had discussed plans to purchase NAHL and that Ricky diverted that opportunity by approving the loan to Parko, which subsequently purchased NAHL. Regardless of whatever plans CAMG made, there was no evidence presented that CAMG had any practical financial ability to participate in a general offer for the controlling shares of NAHL. Appellants similarly did not put forth evidence that CAMG could have or would have participated in a partial purchase of NAHL and obtained anywhere near the same price term as Parko. Given the lack of evidence as to financial and practical opportunity, we conclude that the district court properly granted judgment as a matter of law on this issue.

*CAMG's business opportunities diverted to NAHL*

Appellants assert that two business opportunities were diverted to NAHL: (1) an opportunity to set up an electronic payment processing system with a company called UnionPay in the Hebei province of China, and (2) an opportunity to establish an electronic trading platform for the purchase and sale of fertilizer. The district court ruled that CAMG did not have an expectancy interest or right to these business opportunities. But there was conflicting evidence as to whether the presentation of a business plan from UnionPay to CAMG was evidence that CAMG had the ability to enter into this opportunity, as well as to whether Ricky was the cause of the diversion. There was also conflicting evidence as to whether CAMG had both an expectancy interest and the capability to bring an electronic trading platform into being based on its projected year-over-year

growth, its preexisting activity as both a seller and trading agent for fertilizer, and its attempts to create a commodity exchange. Considering the evidence in the light most favorable to appellants, we conclude that sufficient evidence was presented by which a jury could grant relief, and the district court erred by granting judgment as a matter of law on this issue.

*Corporate waste*

"To recover on a claim of corporate waste, the plaintiffs must shoulder the burden of proving that the exchange was so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (internal quotation marks omitted).

As previously mentioned, the challenged loan was unsecured, offered at zero-percent interest, and allegedly drained approximately 80% of all cash reserves. The loan was subsequently amended to include interest, but there was conflicting evidence regarding whether the loan was repaid. Based on this evidence, appellants presented sufficient evidence by which a jury could conclude that no ordinary business person could find the loan was made under terms that were anything other than one-sided.[5] As a jury could find that the complete lack of consideration and interest when the loan was issued was corporate waste, we conclude that the district court erred by granting judgment as a matter of law on this issue.

---

[5]We note that a lack of security or zero-percent interest loan terms are not per se one-sided, as additional terms or circumstances may alter the analysis and provide adequate consideration, none of which are present here.

*Civil conspiracy*

"An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 303, 662 P.2d 610, 622 (1983). "Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Id.*

Here, the district court granted judgment as a matter of law because it found no evidence of damages, personal benefit, participation in an unlawful objective, an explicit or implicit agreement with anyone to further an unlawful objective, or respondents undertaking an intentional act in furtherance of such. As an initial matter, Nevada does not require an "individual benefit" in order to find civil conspiracy but instead requires a purpose of harm that results in damage. *Id.* Here, the harm that resulted in damage is the same as the damages discussed above, in that 80% of the entire CAM stack's cash reserves were extended in an unsecured, zero-percent interest loan, and it is unclear whether this loan was repaid.

As to an unlawful objective, evidence was presented that Ricky conspired with the other board members to intentionally divert money away from CAMG, including backdating the loan approval to Parko. As to Tracy, Ricky's interrogatory responses indicate that she was aware of the loan prior to it being made, that the loan was made by CAMG, and that Tracy took no action despite knowing the loan was one-sided and knowing that Ricky was on both sides of the transaction. Therefore, we conclude that sufficient evidence was presented by which a jury could grant relief on this claim, and the district court erred by granting judgment as a matter of law.

SUPREME COURT
OF
NEVADA

(O) 1947A

15

*Unjust enrichment*[6]

Unjust enrichment is "the unjust retention . . . of money or property of another against the fundamental principles of justice or equity and good conscience." *Topaz Mut. Co. v. Marsh*, 108 Nev. 845, 856, 839 P.2d 606, 613 (1992) (internal quotation marks omitted). "Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Unionamerica Mortg. & Equity Tr. v. McDonald*, 97 Nev. 210, 212, 626 P.2d 1272, 1273 (1981). "Benefit in the unjust enrichment context . . . denotes any form of advantage, and is not confined to retention of money or property." *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 382, 283 P.3d 250, 257 (2012) (alteration and internal quotation marks omitted).

Appellants presented evidence that, after securing the challenged loan and purchasing NAHL shares, Parko transferred some 10.7 million of those shares to PMI, Ricky's company. Although Ricky testified that PMI transferred the NAHL shares to the individual investors in the fund managed by PMI, Ricky is the sole owner of PMI. When viewed in the light most favorable to appellants, we conclude that there was evidence that Ricky was unjustly enriched at the expense of CAMG and its shareholders and therefore the district court erred by granting judgment as a matter of law as to this issue.

## CONCLUSION

Officers and directors of a parent company can be individually liable where those officers and directors have knowledge of proposed action by a wholly owned subsidiary that is adverse to the parent company and

___

[6]As appellants do not challenge the judgment on their claim against Tracy for unjust enrichment, we do not consider it.

intentionally implement or knowingly permit the adverse action. That liability is not dependent upon piercing the corporate veil and is not limited to wholly owned subsidiaries directly beneath the parent company. After considering the evidence presented, we affirm the district court's grant of judgment as a matter of law as to usurpation of a business opportunity based on CAMG's opportunity to invest in NAHL. We affirm as to the claims of usurpation of a business opportunity and unjust enrichment as to Tracy, because appellants do not raise these claims on appeal. We reverse the district court's grant of judgment as a matter of law as to the other challenged causes of action and remand for proceedings consistent with this opinion. Based on our reversal in part and remand, we vacate the district court's award of attorney fees and costs. *See Halbrook v. Halbrook*, 114 Nev. 1455, 1460, 971 P.2d 1262, 1266 (1998) (reversing the order granting attorney fees due to the reversal on other issues); *Cain v. Price*, 134 Nev. 193, 198, 415 P.3d 25, 30 (2018) (vacating attorney fees when the recipient is no longer the prevailing party).

_____, J.
Lee

We concur:

_____, J.
Herndon

_____, J.
Bell